93      123
21 SC ³329
21 SC ³330

## Cohen *versus* Teller.

1. In an action upon a promissory note it is not competent to show that the defendant was estopped from setting up the defence of forgery to the note in suit, by proving that he had paid other forged notes or recognised them to be valid.

2. Where the defence was forgery in a suit upon a note, it was competent to show that the endorser recognised the note with its endorsement as valid, and that this fact was communicated to the plaintiff, who bought the note upon the faith of it.

3. Letter-press copies of letters are not competent to establish a standard for comparison of handwriting. To authorize the admission of a writing offered as a test or standard, nothing short of proof by a person who saw the party write the paper, or of an admission by the party of its genuineness, or evidence of equal authority, is sufficient.

February 2d 1880. "Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1877, No. 51.

Assumpsit by August Cohen against Solomon Teller, on a promissory note, drawn by M. Kuhn & Brother, to the order of the defendant and endorsed by him. The defendant alleged that the endorsement was a forgery. Moses Kuhn, one of the partners of Kuhn & Brother, was the son-in-law of defendant. Teller Brothers were in the habit of loaning money to Kuhn & Brother and Solomon Teller, who was the senior member of the firm of Teller Brothers, was on most of the paper of Kuhn & Brother as accommodation endorser. Kuhn & Brother failed in December 1874, and left the city, and a large amount of their paper was on the market with Solomon Teller's endorsement. Some of these endorsements, although they were declared to be forgeries by Teller, were nevertheless paid by him. The testimony was conflicting in regard to the genuineness of the note in suit which the plaintiff had bought from David Kohn, a note-broker, who had received it from Kuhn & Brother. On behalf of the plaintiff, one Cansler testified as follows : " David Kohn handed me this note. In consequence of what he told me, I took this one and a second note to defendant, Teller Brothers. I asked to see defendant. He came out. I handed him these two notes. I asked him to discount them. We were near each other. He said he had no funds at present, but might at a future time take them. I then retired. I returned to David Kohn. I handed him back the notes. I repeated to David Kohn what defendant had told me. Defendant stood when I handed him this and the other note first outside of his inner office, in part of the store. I handed them both to him. He had them in his hand. He looked at them, and then said what I have stated. Defendant looked at his handwriting to the best of my knowledge."

[Cohen *v.* Teller.]

Defendant moved to strike out of the answer of the witness that he "repeated to David Kohn what defendant told him." The court struck out the evidence. (First assignment of error.)

The plaintiff recalled David Kohn, and offered to show that after Cansler returned, the latter stated to witness what had passed between defendant and Cansler, as just testified to by Cansler, and that in consequence of this report from Cansler, the witness told plaintiff, before plaintiff bought the note, that there was no doubt about the genuineness of the endorsement. Objected to by defendant. Overruled. (Second assignment of error.)

Also, to prove by the same witness, that Cansler returned with the notes, and reported the conversation to the witness which he had with the defendant, as testified to by Cansler, and that two or three days afterwards the witness offered the note sued on to plaintiff to purchase it. The plaintiff asked whether it was an accommodation or merchandise note, as plaintiff did not like accommodation paper, and preferred merchandise paper. That the witness told plaintiff it was an accommodation note, but was perfectly safe, as defendant had told a friend of the witness, who went up and showed defendant the endorsement (meaning Cansler), that he, the defendant, said he would buy it, but had no money just then. To be followed by proof that the plaintiff, on the faith of that, bought the note. Defendant objected. Offer overruled. (Third assignment of error.)

The plaintiff then proposed to ask this same witness, "Had you, or not, any conversation with defendant in the summer of 1874, as to his endorsement?" Objected to. Objection overruled. (Fourth assignment of error.)

The defendant offered in evidence, as test signatures, three letter-press copies of letters signed by defendant, dated July 2d 1874, August 10th 1874, and September 5th 1874. Objected to, and objection overruled and evidence admitted. (Fourteenth assignment of error.)

In the general charge, the court, Peirce, J., inter alia, said: "Urged by duty to himself, to society, and to the law, on one hand, and, on the other hand, urged by considerations of family interest, and the protection of those who are dearer to him than his own life, defendant may have committed acts of embarrassment, he may have halted and hesitated, and may, in consequence, have assumed responsibilities and become liable to others. We must look at these matters tenderly and mercifully, and not with too sharp a judgment.

"A forgery is a dreadful crime; it is a blow struck at the very well-being of society; it, and its kindred crime of perjury, are alike infamous in their character; they are blows struck, sometimes at the life of men, sometimes at their good name and character, and sometimes at their estates and fortunes, and in the

[Cohen *v.* Teller.]

presence of these foul crimes no man is safe, either in life, reputation or estate; therefore, before you give validity to a document which is alleged to have been forged, you should carefully deliberate, and substantially and well satisfy your minds that it is a genuine endorsement; for, if you find this endorsement a forgery, and Solomon Teller is not estopped from showing that it is a forgery, every man in the community has an interest in your saying that it is a forgery, for it is to the interest of every community that no forgery should prevail. If encouragement be given to perpetrators and circulators of forgeries, no man's estate would be safe, nor would his life be without jeopardy, nor his good name worth preserving."

These two portions of the charge constituted the fortieth and forty-first assignments of error.

The verdict was for defendant, and after judgment thereon the plaintiff took this writ, alleging, inter alia, that the court erred as set forth in the above assignments of error.

*Francis E. Brewster* and *F. Carroll Brewster*, for plaintiff in error.—It is submitted, that by inconsistent rulings, while the plaintiff was allowed to prove what the broker told him, he was not allowed to support this by the testimony of the broker. He thus stood before the jury upon this important branch of the case uncorroborated by the other party to the conversation. The injustice of this more strikingly appears when it is remembered that upon this branch of the case the defendant attempted to contradict Cansler. The plaintiff contends that there was error in ruling out his offer to show that David Kohn had repeated to plaintiff the defendant's admissions. Unless these admissions were the operating cause with the plaintiff in the purchase of the note, there was no room in the case for the doctrine of estoppel. If it were competent to prove by the plaintiff that David Kohn told him this, why was it not competent to show the same thing by David Kohn? For these reasons it is submitted that there was error in striking out of Cansler's testimony the statement that he repeated to David Kohn the defendant's admissions as to the note in suit. This was part of the *res gestæ*.

The defendant, according to the theory of his defence, knew for months that his name was being forged to negotiable paper. He made no effort during all this time to acquaint himself with the true state of affairs, and when at length large amounts of this paper were brought to his immediate notice, he commits himself in some cases, in others he eludes inquiry by evasive answers, and in all he quietly stands by and allows innocent parties to buy this forged paper. He is estopped by his own acts: Pickard *v.* Sears, 6 Ad. & E. 469; Freeman *v.* Cooke, 2 Exch. 654; McMahon *v.* McMahan, 1 Harris 380; Waters's Appeal, 11 Casey 523; Reel

[Cohen *v.* Teller.]

*v.* Elder, 12 P. F. Smith 308; Smith *v.* McNeal, 18 Id. 164; Niven *v.* Belknap, 2 Johns. 589; Gregg *v.* Von Phul, 1 Wall. 280; Chapman *v.* Chapman, 9 P. F. Smith 218; Meason *v.* Kaine, 17 Id. 132.  The silence of a party to whom a note purporting to be signed by him was shown, with a request to pay it, is competent evidence that his signature is genuine, or if not genuine, of his assent to be bound by it: Corser *v.* Paul, 41 N. H. 24; Greenfield Bank *v.* Crafts, 2 Allen 269.  See Starkie on Evidence, 9th edition (note), star page 51; Casco Bank *v.* Keene, 53 Maine 103; Hefner *v.* Dawson, 63 Ill. 403; 14 American Rep. 123.  The jury were instructed by the court to look at the defendant's conduct "tenderly and mercifully."  Such language from the court was undoubtedly calculated to enlist the sympathies of the jury in favor of the defendant and control its deliberations adversely to plaintiff's interest: Mohney *v.* Evans, 1 P. F. Smith 80; Burke *v.* Maxwell, 31 Id. 153.  The court, in stating their opinion, based upon a confession of handwriting, withdrew from the jury the duty which belonged appropriately to them, as laid down in Bank *v.* Whitehill, 10 S. & R. 110; Lodge *v.* Phipher, 11 Id. 334; Baker *v.* Haines, 6 Whart. 284; Travis *v.* Brown, 7 Wright 9; Haycock *v.* Greup, 7 P. F. Smith 438; Aumick *v.* Mitchell, 1 Norris 211.

*Samuel Dickson, John C. Bullitt* and *Moses A. Dropsie,* for defendant in error.—The part of Cansler's testimony that was stricken out was inadmissible, because it was a communication made in the absence of the defendant, who was to be affected by it, and the witness could not testify by wholesale but should have repeated the language used, so that the jury could judge whether he had correctly repeated it.  The striking out of evidence is a matter for the court only, as the jury must be instructed to disregard incompetent testimony, if once admitted: Yeager *v.* Weaver, 14 P. F. Smith 425.  The objection to the letters was that they were copies.  A copy is a transcript, imitation, or representation of the original, and in a loose sense the impression taken from types is said to be a copy, but strictly speaking, an impression taken from one's writing is not a copy, as it is neither a transcript, imitation or representation, but is the same as or identical with the original, being produced from it.

The court correctly enunciated the law of estoppel as enunciated by Bigelow on Estoppel 485, and in Commonwealth *v.* Moltz, 10 Barr 527.  The defendant could not be estopped by anything said to Cansler unless notice was in some way brought to him that Cansler was about to act upon the faith of his declaration: Bigelow 485, 491; Hackett *v.* Callender, 32 Vt. 97; Morgan *v.* Spangler, 14 Ohio 102; Danforth *v.* Adams, 29 Conn. 107; Taylor *v.* Ely, 25 Id. 250.  The court ruled the law against the

[Cohen *v.* Teller.]

defendant, and the plaintiff failed to prove that the defendant ever saw or spoke to Cansler. In such a state of evidence the only maxim necessary is *cadit quæstio.*

Mr. Justice PAXSON delivered the opinion of the court, March 1st 1880.

There are forty-three assignments of error in this case. I have examined them all patiently and laboriously. To discuss them in detail would extend this opinion to an unreasonable length. Nor is it necessary. While the record abounds in exceptions, many of the errors assigned have been cured by the subsequent rulings of the court; evidence improperly excluded having been afterwards admitted, and evidence improperly admitted subsequently stricken out.

The suit below was an action of assumpsit, brought by August Cohen, the plaintiff, against Solomon Teller, the defendant, as endorser of a promissory note made by the firm of M. Kuhn & Co.; one of the makers was a son-in-law of the defendant. The latter alleged that his signature as endorser was a forgery. The case went to the jury upon this issue.

The record is voluminous and not very clear. This was perhaps due in part to the fact that some matters not pertinent to the issue were allowed to be introduced upon the trial, the consideration of which occupied much time, and may have misled the jury. The force of this observation will be the more readily understood when the fact is stated that the trial in the court below upon the single issue of forgery occupied nearly one month. The contention of the plaintiff was that even if the endorsement was a forgery, yet the defendant was estopped by his acts and declarations from setting up the forgery as a defence. Instead of confining the case to the particular note in suit, evidence was offered and admitted to show that a large amount of similar forged paper had been issued, which, it was contended, the defendant had recognised or paid. All of this evidence should have been excluded; the only effect of it was to consume time, and confuse if not mislead the jury. It was not competent to show that the defendant was estopped from setting up the defence of forgery to the note in suit by proving that he had paid other forged notes, or recognised them as valid. It would be a harsh rule to hold that a man who had paid one or more forged notes to save the honor of the makers, thereby rendered himself liable upon all other forged paper which the makers may have issued. As the case must go back for another trial, we deem it proper to make this reference.

We will now consider such of the assignments of error as require notice. The first, second and third allege the court erred in excluding the evidence tending to show that defendant's admissions in regard to the note in suit had been communicated to the

[Cohen *v.* Teller.]

plaintiff.   The ground of the alleged estoppel was that the defendant had recognised the note with its endorsement as valid; that this fact had been communicated to the plaintiff, who bought the note upon the faith of it.   The learned court subsequently permitted the plaintiff to testify that the witness David Kohn had told him what had been said by Cansler as to the defendant's admissions, and to this extent the error was cured.   But if it was competent to prove this by the plaintiff, it was also competent to prove it by Kohn, and the exclusion of his testimony upon this point deprived the plaintiff of the benefit of Kohn's corroboration.

The fourteenth assignment is sustained.   The letter-press copies of defendant's letters were not competent evidence to establish a standard.   When a writing is introduced as a standard to enable a jury to make a comparison of handwriting, the standard itself must not be open to dispute.   It must either be admitted to be genuine or established in the cause.   To authorize the admission of a writing offered as a test or standard, nothing short of proof by a person who saw the party write the paper, or of an admission by the party of its genuineness, or evidence of equal authority, is sufficient: Baker *v.* Haines, 6 Whart. 284; Depue *v.* Place, 7 Barr 428; Travis *v.* Brown, 7 Wright 9.   Here there was merely a copy—a press copy, it is true—of the nature of a fac simile, but not necessarily exact, as the spreading of the ink in such copies often obliterates the fine lines of a handwriting, though substantially preserving its original form.   It is manifest such copies would be an unsafe standard.   I know of no authority for their introduction, and upon principle they are inadmissible.   It is difficult to see why this evidence was introduced, as a reliable standard had previously been given in evidence.

The portions of the charge embraced in the fortieth and forty-first assignments, considered alone, are not free from criticism, but when read in connection with the whole charge, of which they form a part, are not seriously objectionable, at least, not to the extent of justifying a reversal.   But the case must go back for the other reasons above stated.   The remaining thirty-seven assignments do not require discussion.

Judgment reversed, and a *venire facias de novo* awarded.