(83 App. Div. 393.)

FARRELL v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. May 15, 1903.)

1. EVIDENCE—HANDWRITING—STANDARD OF COMPARISON—PROOF OF GENUINE-
NESS.

Under Laws 1880, p. 141, c. 36, as amended by Laws 1888, p. 911,
c. 555, authorizing the introduction of standards for comparison of dis-
puted handwritings where such standards are proved to be genuine, it
was not error to rule that a contract for the sale of certain real estate
in controversy, alleged to have been signed by deceased, was not suffi-
ciently proved to contain decedent's genuine signature to authorize its
use as a standard for comparison, where the only proof thereof was that
the contract was found among decedent's papers; decedent's son having
refused to testify that his father's signature thereon was genuine.

2. SAME.

Where the only evidence of genuineness of decedent's signature to a
consent for the construction of an elevated railway in front of his prop-
erty was that of decedent's son, who testified that, though the signature
on the consent looked like his father's signature, he could not tell that
it was, for the reason that a long time had elapsed since he had seen
his father's signature, the exclusion of the consent for want of proof of
the genuineness of such signature was not error.

Appeal from Special Term, New York County.

Action by Edward D. Farrell against the Manhattan Railway Com-
pany and another. From a judgment in favor of plaintiff, defendants
appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, INGRAHAM, and LAUGHLIN, JJ.

Sherrill Babcock, for appellants.
Edwin M. Felt, for respondent.

INGRAHAM, J. This action was brought to enjoin the defend-
ant from maintaining and operating an elevated railroad in front of
the premises No. 2255 3d avenue, between 122d and 123d streets,
in the city of New York. The only serious question presented is
based upon the exceptions by the defendants to the refusal to admit
in evidence a consent to the construction of the railroad, alleged to
have been signed in October, 1875, by one John Walther, who at
that time was the owner of the property in question, and to a re-
fusal to allow an expert in handwriting to testify as to the signature
to this consent. A son of John Walther was called as a witness for
the plaintiff. Upon his cross-examination this consent was produced
by defendant, and he was asked whether the signature to the con-
sent was that of his father, to which the witness replied: "It is so
long ago since I seen it, I can hardly tell. It seems like it. I cannot
tell." He was then asked whether he was familiar with his father's
signature during his lifetime, to which the witness answered that he
supposed that he was, but that it was so many years ago since he had
seen it that he could not swear to it; that the signature to this con-
sent looked something like it; that his father died in 1876. The wit-
ness was subsequently called by the defendant, and produced several
papers which he testified he had found among his father's papers after
his father's death, which he supposed to be genuine. Among these

papers was a contract for the purchase of the premises in question from the former owner, which appears to have been dated in 1864, about the time of the conveyance of the property. This contract was offered in evidence, and seems to have been received without objection. The defendant then called an expert in handwriting, who was shown the consent alleged to have been signed by John Walther, and also the contract over the purchase of the property which had been produced by Walther's son, and was asked whether he had compared these two signatures, to which he said he had, and was then asked: "And in your opinion, is the signature of the one on X for identification [the consent] the same as on Exhibit A1 [the contract]?" That question was objected to upon the ground that neither had been shown to be the signature of John Walther. This objection was sustained. The witness was then asked: "In your opinion, did the same person write both signatures?" "I show you Exhibit X for identification [the consent], and ask you if, in your opinion as an expert, that is a genuine signature?" These questions were also objected to, and the objections sustained. The defendant excepted to these rulings. The refusal to allow the expert to testify as to the similarity between the signature of the contract produced and the consent was, I think, correct. The rule permitting a comparison of handwritings is founded upon the statutes which enlarge the common-law rule by permitting the use of genuine writings as standards of comparison, when they are not competent or relevant for any other purpose. The statute under which the defendants offered this evidence is chapter 36, p. 141, of the Laws of 1880, as amended by chapter 555, p. 911, of the Laws of 1888. Section 1 of that act provides:

"Comparison of a disputed writing, with any writing proved to the satisfaction of the court to be genuine, shall be permitted to be made by witnesses in all trials and proceedings, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

Section 2 of the act provides:

"Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine handwriting of any person, claimed on the trial to have made or executed the disputed instrument, or writing, shall be permitted and submitted to the court and jury in like manner."

To justify the court in allowing evidence of a comparison between two signatures, the standard must be proved to the satisfaction of the court to have been the genuine writing of the person who it was claimed executed the disputed instrument. The court who heard the testimony was not satisfied that the signature to this contract was the genuine signature of the person whose consent it was sought to prove. It is true that it was found among the papers of the witness' father after his death, and purported to be a contract for the conveyance of the property which had been conveyed to the father, and which purported to be executed by the grantor, who had subsequently conveyed the property, but this was not sufficient to show that the signature was genuine. The son—the only witness called to testify to the handwriting—could not testify that he had ever seen

his father write. He expressly disclaimed knowledge of his father's handwriting, and, although apparently disinterested, he refused to testify that the signature to the consent or the contract was genuine. The question as to the proof of a standard of comparison under the acts of 1880 and 1888 was quite fully discussed by the Court of Appeals in the case of People v. Molineux, 168 N. Y. 264, 61 N. E. 286. Judge Werner, in delivering the opinion of the court in that case, says:

"The words 'proved to the satisfaction of the court' are to be construed in the light of the obvious purpose for which these statutes were enacted. At common law a paper properly in evidence for general purposes can be compared with a disputed writing, but only when the genuineness of the handwriting of the former is admitted or proved beyond a reasonable doubt. Since these statutes were designated to amplify and broaden the common-law rule by permitting the use of genuine writings as standards of comparison, even when they are not competent or relevant for other purposes, it must be assumed that the language prescribing the manner in which the genuineness of such writings is to be established was carefully and deliberately chosen by the Legislature. While it is obvious that the words 'proved to the satisfaction of the court' do not invest the trial court with a mere personal discretion, which is to be exercised without reference to rules of evidence, it is equally plain that the failure of these statutes to prescribe the precise method or degree of proof necessary to establish the genuineness of a writing for purposes of comparison with a disputed writing renders it necessary to resort to the general rules of the common law for that purpose. Thus the genuineness of a writing may be established (1) by the concession of the person sought to be charged with the disputed writing, made at or for the purposes of the trial, or by his testimony; (2) or by witnesses who saw the standards written, or to whom or in whose hearing the person sought to be charged acknowledged the writing thereon; (3) or by witnesses whose familiarity with the handwriting of the person who is claimed to have written the standard enables them to testify to a belief as to its genuineness; (4) or by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns. * * * In civil cases the genuineness of such a paper must be established by a fair preponderance of the evidence, and in criminal cases beyond a reasonable doubt. Writings proved to the satisfaction of the court by the methods and under the rules adverted to may be used as standards for purposes of comparison with a disputed writing."

There was thus submitted to the court a question of fact—as to whether this alleged standard had been proved to be the genuine handwriting of the person whom it was sought to charge as having signed the disputed consent—that the trial judge had to decide; and he decided that the standard was not sufficiently proven to justify him in using it as a standard with which to compare the signature to the disputed instrument—a decision which we are not justified in reversing. We then come to the question as to the admissibility of the consent, and we think there was presented, as to that, a question of fact, and that the trial judge was justified in refusing to admit it in evidence. I do not understand that a man's son is presumed to be acquainted with his father's signature, any more than a stranger. In either case, to entitle a person to testify as to the genuineness of a disputed signature, a knowledge of the handwriting of the person whose signature is sought to be proved is necessary. The only witness called to prove the signature testified that he had no recollection

of having seen his father write—no recollection of his father's signature—and disclaimed sufficient knowledge which would enable him to testify as to the genuineness of the signatures exhibited to him. His belief upon the subject, in the absence of knowledge of his father's handwriting, would be of no consequence. It is quite clear, I think, that we would not be justified in reversing the action of the trial justice in refusing to admit this consent in evidence.

I think that the awards were sustained by the evidence. Third avenue at this locality was built up many years before the elevated railroad was constructed. There are three tracks in front of this property. That both the rental and fee value of property in adjacent avenues have increased largely in value since 1873 is satisfactorily established, yet this property has not benefited by this increase.

Upon the whole case, the judgment should be affirmed, with costs. All concur; PATTERSON, J., in result