# Mutual Life Insurance Co. of N. Y. *v.* Witte.

*Action on Insurance Policy.*

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 263.)

1. *Insurance; Action on Policy; Misrepresentation; Pleas.*—Pleas which allege that the insured represented that his health was good from infancy, when, in fact, it was not always good, and that he was in failing health due to a disease unknown to the insurer, and pleas which otherwise failed to show with certainty wherein the alleged representations were false, were subject to demurrer.

2. *Same.*—A plea alleging that the insured represented his health to be good, when in fact, he was suffering from a disease unknown to the insurer, which increased the risk, is self-contradictory, since if the insured did not know the nature of the disease, it could not know that it increased the risk, and courts will not enter upon such wide inquiries.

[Mutual Life Insurance Co. of N. Y. v. Witte.]

3. *Pleadings; Requisites; Certainty.*—All matter pleaded ought to be clearly and distintly stated so that it may be fully understood by the adverse party, and by the jury and the court.

4. *Appeal and Error; Harmless Error; Pleading.*—Where other pleas set up the same defense, and under them defendant could introduce all the evidence which would be admissible under those held bad, error in sustaining demurrer to some of such pleas was harmless.

5. *Charge of Court; Reference to Pleading.*—Where demurrers have been sustained to some of the pleas, a charge asserting that if defendant proved any of its pleas plaintiff could not recover was properly refused.

6. *Insurance; Evidence; Hearsay.*—Hearsay evidence that the mother of the insured had died with tuberculosis is not admissible.

7. *Same; Misrepresentations.*—Where the defense to an action on a life insurance policy was misrepresentations by insured, it was not error to exclude evidence of the poor conditions of his health, of the fact that he was engaged in an occupation exposing him to tuberculosis, or was in a weak condition after the policy was issued, in the absence of an offer to show that such condition existed at the time the application was made.

8. *Same.*—Where the defense was fraudulent misrepresentations in procuring a life insurance policy, evidence that insured had written a letter claiming indemnity on the ground of illness under an accident insurance policy, and that on such application a physician would have been consulted, raised collateral issue where it was not conceded that insured had such a policy or made a claim thereunder, and was therefore inadmissible.

9. *Appeal and Error; Review; Questions Presented; Record.*—Where the record showed that a notice of claim on an accident policy had been received by the witness, but witness did not know that it was sent by the insured, and this was followed by directions to the clerk to set out the claim in full, and the clerk showed that it had never been filed with him, error in the rulings as to the claim for indemnity is not so presented as to be reviewed.

10. *Evidence; Handwriting; Comparison; Disputed Standard.*—Where the signature of neither document was admitted, conceded, or proven without dispute, an expert witness cannot testify as to the similarity or identity of the handwriting in the two documents.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by Marie Witte against the Mutual Life Insurance Company of New York, on a life insurance policy. Judgment for plaintiff and defendant appeals. Affirmed.

TILLMAN, BRADLEY & MORROW, and B. G. FARMER, for appellant.

W. L. LEE, for appellee.

MAYFIELD, J.—The action is on a life insurance policy. The insurance company interposed 18 pleas— the general issue and 17 special pleas. The special pleas were of two classes; one class setting up false and fraudulent representations by the insured, made with the intent to deceive, in obtaining the policy, and the second class setting up false representations by the insured in obtaining the policy sued on, which representations, being false, increased the risk.

The pleas were thus confessedly framed under each of the two alternatives contained in section 4572 of the Code, which section reads as follows:

"No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of life insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

A great number of pleas, similar to the ones in question, were construed with reference to this and other sections of the Code in the cases of *Insurance Co. v. Allen,* 174 Ala. 517, 56 South. 568, and *Insurance Co. v. Gee,* 171 Ala. 435, 55 South. 166. It is therefore unnecessary to restate the rules as to the sufficiency of such pleas in cases like this; it being both apparent and conceded that the pleas were proved with special reference to the pleas and the opinions and decisions in those two cases.

The trial court sustained demurrers to pleas 2, 6, 10, 12, and 14, and overruled demurrers to pleas 3, 4, 5, 7, 8, 9, 11, 13, 15, 17, and 18.

(1, 2) There was no error in sustaining demurrer to any one of the pleas. They were each defective under

the rules declared in *Allen's Case, supra, and Gee's Case, supra.* Each was bad for one or more of the following reasons: Being too indefinite and uncertain in averment to show wherein the alleged representations were false. No definite and material issue of fact could be taken thereon. For example, some alleged that the insured represented that his health was good from infancy, when in fact it was not always good, and he was in failing health due to a disease unknown to the defendant; and others, after this, alleging that insured had a disease which was unknown, yet averring that the unknown disease increased the risk. Such pleas, of course, were self-contradictory. If a disease was unknown, how could it be known to be one which increased the risk? How was it possible for the plaintiff to disprove this plea, except to prove that the insured never, in his lifetime, had any disease known to the nomenclature of medical science? Courts will not enter upon such inquiries.

(3) An important requisite in all pleading is certainty. The matter pleaded ought to be clearly and distinctly stated, so that it may be fully understood by the adverse party, by counsel, and by the jury and the judges.

(4) There was no error in sustaining demurrer to any of the other pleas, which did not contain the defect as to uncertainty. They were each bad under the rules declared in *Allen's and Gee's Cases, supra.* Moreover, if there could be said to be any technical error in any one of the rulings on these pleas, it is made to appear beyond doubt that no possible injury did or could result from such ruling, for the reason that the other pleas, as to which the demurrers were overruled, set up the identical defense attempted to be set up in these pleas. All the legitimate proof which could have been offered

under any one of these pleas, as to which demurrers were sustained, could have been offered under one or another of the numerous pleas as to which demurrers were overruled.

There was no error in refusing the general affirmative charge to the defendant, upon the whole case, or as to any one of the many pleas. The mere fact that insured died of consumption did not prove that he had the disease when he was insured. The evidence falls far short of showing that he did have such disease, or any other disease, when he made the application for insurance. The proof as to any one of the pleas was clearly a question for the jury.

(5) There was no error in refusing charge 21, to the effect that, if the jury believed from the evidence that the defendant had proved any one of its pleas, their verdict should be for the defendant. A litigant has no right to require a jury to go through all the pleadings in a case like this, and to sort out those as to which demurrers were sustained, and those as to which they were overruled, and to say whether this one or that one was proved. For example, in this case, there were in the file some pleas as to which demurrers were sustained, and hence no issue was found as to these pleas; yet this charge would have authorized, if it did not require, the jury to find for the defendant, if they believed that plea 2, 6, 10, 12, or 14 was proven. This charge, in the case, might have misled the jury, if it had not been otherwise bad.

(6) It was not error to refuse to allow proof, by hearsay testimony, as to whether or not the insured's mother died of pulmonary tuberculosis.

(7) There was no error in declining to allow proof that insured was engaged in work which was conducive to tuberculosis, nor that he was subject or liable to con-

tract such a disease, nor that he was in a weak and debilitated condition after the policy was issued, unless it had been shown, or offered to be shown, that he was in such condition when the application for insurance was made, and that it had continued. It must be expected, in all life insurance policies or contracts, that the insured will thereafter get weak, feeble, and debilitated, and indeed the contract itself provides for his death thereafter.

(8, 9) There was no error in declining to allow the defendant to prove by the witness Stringfellow that insured wrote him a letter stating that he was ill and desired to apply for indemnity in consequence thereof, under an accident insurance policy which the insured had with another company. This was res inter alios acta. It might have opened up a flood of evidence as to whether or not insured had such a policy, whether or not he wrote the letter in question, and whether the statements therein were true or false. The trial court properly declined to go into these inquiries. If the insured had testified as a witness, this proof might have been admissible, after proper predicates, to contradict or discredit his evidence; but he was not a witness, and could not affirm, deny, or explain the transactions with this accident company. If it had been conceded that insured had such a policy, and wrote such letter, and thereafter made out a claim, on the ground of illness, for compensation under such accident policy, the question would be before us as to the admission of the letter and the application for compensation. But it is not now before us. As to these matters the transcript contains the following recitals: "The defendant then asked the witness this question, 'Did Mr. Witte make any claim of you under that policy?' The plaintiff objected to this question, and it was not passed on by the court. The witness testified that the claim was in writing, and the defendant

showed the witness a paper, and the witness said it was a notice of claim, but he did not know himself that Witte did or did not sign the paper; that he reecived it in the due course of mail at his place of business in Montgomery; that it was in an envelope. The defendant asked the witness, 'Was it postmarked at Lockhart?' Plaintiff objected to the question. The court sustained the objection, and defendant excepted. The said claim or notice was in words and figures as follows: '(The clerk will set out said claim in full.) No such paper was ever in my possession, and is not now in the file; hence not set out."

In this state of the record we cannot say that there was any error in the rulings as to the letter or as to the claim for indemnity under the accident insurance policy, or any error in declining to allow the defendant to prove by the witness Stringfellow whether or not physicians were consulted when applications reached the medical department of the insurance company in New York, and that the medical examiner would in time write the physicians shown to have been consulted. This was res inter alios acta.

(10) There was no error in declining to allow the expert witness to testify as to the similarity, or the identity, of the handwritings of the application for life insurance and of the letter addressed to the witness Stringfellow. It was not sufficiently shown or admitted that the insured signed either one. The genuineness of neither was admitted or conceded or proven without dispute. Consequently comparison was not admissible, even by an expert on the subject.

We find no error and the judgment must be affirmed.
Affirmed.

ANDERSON, C. J., and SOMERVILLE and DE GRAFFENRIED, JJ., concur.