# CASES DECIDED

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1919, IN THE ONE
HUNDRED THIRD AND ONE HUNDRED FOURTH
YEARS OF THE STATE.

---

PLYMOUTH SAVING AND LOAN ASSOCIATION No. 2 *v.*
KASSING, ADMINISTRATOR.

[No. 10,138. Filed December 19, 1919.]

1. EVIDENCE.—*Handwriting.*—*Comparison.*—*Standards.*—*Failure of
   Proof.*—Checks offered for the purpose of establishing their sig-
   natures as standards for comparison with the disputed signature
   in issue, are properly excluded where the signatures on the checks
   are neither proved nor admitted to be genuine. p. 4.

2. EVIDENCE.—*Handwriting.*—*Comparison.*—*Rule at Common Law.
   *—*Effect of Statute.*—The rule at common law making inadmis-
   sible, for the sole purpose of comparison of handwriting, irrele-
   vant papers not admitted to be genuine and preventing the
   establishment of such genuineness by other evidence, has been
   abrogated by Acts 1913 p. 840, §528a Burns 1914, which permits
   comparison of disputed handwriting by any admitted or proved
   handwriting of the person involved. p. 5.

3. EVIDENCE.—*Handwriting.*—*Comparison.*—*Standards.*—*Irrelevant
   Papers.*—*Care in Admitting.*—In admitting papers for compari-
   son of handwriting under §528a Burns 1914, Acts 1913 p. 840,
   not properly in evidence for any other purpose, no instrument
   containing irrelevant matter likely to prejudice the jury should
   be received on the pretext of comparison, and the court should
   be careful not to allow any writing to go to the jury that might
   possibly improperly influence them in the case on trial. p. 7.

Plymouth Saving, etc., Assn. *v.* Kassing, Admr.—72 Ind. App. 1.

4. EVIDENCE.—*Handwriting.—Comparisons.—Examination.—Rights of Parties.*—Under §528a Burns 1914, Acts 1913 p. 840, the right to produce standards of comparison of a disputed handwriting is equally open to both parties, subject to examination and cross-examination, but before a writing can be used as a standard, its genuineness must be satisfactorily established either by other evidence or by the admission of the adverse party, and cannot be proved by comparing it with another instrument. p. 7.

5. EVIDENCE.—*Handwriting.—Admissibility of Standards of Comparison.—Insufficient Proof.*—That canceled checks were found among the papers of an absentee, or were returned by a bank as being his checks, is not sufficient proof to authorize their introduction in evidence. p. 17.

6. EVIDENCE.—*Handwriting.—Comparison.—Standards.—How Established.—Expert Testimony.*—Under §528a Burns 1914, Acts 1913 p. 840, the genuineness of a writing offered as a standard of comparison of handwriting may be established (1) by the admission of the person sought to be charged with the disputed writing, made at, or for the purposes of, the trial or by his testimony, (2) by witnesses who saw the standard written, or heard the writing thereof acknowledged by such person; (3) by evidence of the acquiescence in or recognition of the standard by the reputed writer, or that it has been adopted and acted upon by him in his business or other concerns; but such standards cannot be proved by expert testimony, and, before they can be submitted to the jury for comparison the proof of their genuineness should be so clear as to raise no collateral issue. p. 21.

7. EVIDENCE.—*Handwriting.—Comparison.—Establishment of Standards.—Questions for Court and Jury.*—Under §528a Burns 1914, Acts 1913 p. 840, the question whether the genuineness of the standard has been sufficiently proved to authorize its submission to the jury, or to an expert for comparison, is a question for the court, but, when admitted, the question of its genuineness is ultimately one of fact for the jury. p. 21.

8. EVIDENCE.—*Handwriting.—Comparison.—Proof of Standard Uncontradicted.—Exclusion Erroneous.*—Where the only proof as to the genuineness of signatures offered as standards of comparison under §528a Burns 1914, Acts 1913 p. 840, is by an eyewitness to the signature, who was in no manner disputed or impeached, it was error to refuse to permit them to be shown to the jury for such purpose. p. 22.

9. APPEAL.—*Review.—Exclusion of Evidence.—New Trial.*—Where exhibits offered under §528a Burns 1914, Acts 1913 p. 840, as standards of comparison of a signature in dispute are erroneously

excluded from submission to the jury, with the result that the evidence contains but one standard of the absentee's handwriting in controversy which standard is almost four years older than the signatures excluded, which in turn are several years older than the signature in dispute, the court erred in overruling a motion for new trial, in view of the well-known hesitation and frequent refusal of experts to give an opinion as to the genuineness of a signature with but one standard for comparison. p. 22.

From Marion Probate Court (975); *Mahlon E. Bash,* Judge.

Action by Edmond H. Kassing, administrator of the estate of William Bretthauer, absentee, against the Plymouth Saving and Loan Association No. 2. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Newton J. McGuire,* for appellant.

*Pickens, Cox & Conder* and *Harry F. Pavey,* for appellee.

McMahan, J.—Action by appellee, as administrator of the estate of William Bretthauer, absentee, against appellant to recover on a deposit alleged to have been made by said absentee with appellant.

Appellant in defense contended that said absentee had borrowed $1,400 of it and had executed a note to appellant for said amount, and asked that the same be set off against any sum found due appellee. The appellee contended that the note was a forgery.

The only question for determination on this appeal relates to the action of the trial court in refusing to permit appellant to introduce in evidence a number of checks, designated as exhibits 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17 and 18. The appellee contends that there was no error in the refusal to admit these exhibits in evidence for the reason that they were offered in evi-

dence generally, and not for the purpose of compar-
ing the signature of the absentee on them with the
signature on the note. During the examination of the
witness Elias Katterhenry concerning these exhibits,
and before any of them were offered in evidence, ap-
pellee asked and was granted the privilege of asking
the witness a preliminary question, at which time
counsel for appellant and appellee entered into a dis-
cussion relative to the right to use the signature on
them as standards of comparison. In the course of
this discussion appellant's counsel contended in sub-
stance that it was proper to use a known genuine
signature for the purpose of showing it to the jury
as a genuine signature. That such signatures ought
to do more than any other thing to determine the
genuineness of the signature in question, to which
counsel for appellee replied: "If a genuine signa-
ture was exhibited and became a paper in the case,
then comparison is proper." We are clearly of the
opinion that the purpose for which the exhibits were
sought to be introduced in evidence was understood
by court and counsel to be for the purpose of com-
paring the signatures of the absentee thereon with
the signature on the note.

In so far as exhibits 6, 7, 8, 9, 14, 15, 16, 17, and 18
are concerned, the signature of the absentee was
neither proved nor admitted to be genuine.

1. There was therefore no error in the action of
the court in refusing to permit them to be in-
troduced in evidence and submitted to the jury for
comparison.

Exhibits 6, 7, 8, 9, 10, 11 and 12 were voucher checks
drawn by appellant and claimed to have been indorsed
by the absentee. The other exhibits were checks

claimed to have been drawn on a bank and signed by the absentee.

Exhibits 10, 11 and 12 were voucher checks which had been issued by appellant to the absentee several years prior to the execution of the note in controversy. Mr. Katterhenry, who was the secretary of the appellant, testified that he saw the absentee, William Bretthauer, sign his name on the back of each of these exhibits.

Under the common law as applied and interpreted by the courts of appeal in this state, irrelevant papers not admitted to be genuine were not admissible 2. for the sole purpose of comparison. It was not competent to establish the genuineness of such papers by other evidence for the purpose of using them as a standard of comparison. *Williams* v. *State* (1911), 175 Ind. 93, 93 N. E. 448; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 41 N. E. 336; *White Sewing Machine Co.* v. *Gordon* (1890), 124 Ind. 495, 24 N. E. 1053, 19 Am. St. 109. This rule made the proof of forgery difficult, tied the hands of those seeking to show the facts, encouraged crime, and assisted the criminal. Osborn, in his introduction to "Questioned Documents," p. xxii, said: "This procedure is a curious inheritance projected into the present day practice and its continuance is one of the curiosities and misfortunes of legal procedure. In jurisdictions where no standards are admitted writing in many cases must be proved by those alone who are said 'to know a handwriting,' and the spectacle is too often presented of one line of tottering old men and women, who saw some one write many years before, all testifying that they think a certain writing is genuine and another similar line testifying that from their

recollection it is not genuine. Such witnesses many times may not be able to see well enough to get the papers right side up and such 'proof' is often a veritable farce.''

In discussing the standards of comparison, Mr. Osborn says: ''Under this peculiar and unfortunate condition it is usual that only very inadequate if not wholly improper standards are available and under such conditions it is not surprising that so-called proof of handwriting is often a mere farce.  *  *  * Under this old practice where the standard writing came into the case 'by accident' it is not to be wondered at that such testimony often deserved the criticism it received and the whole history of the subject has been clouded by this unfortunate. procedure.'' Osborn, Questioned Documents 16, 18.

The common-law rule was changed in England by statute in 1854. Massachusetts and Connecticut from the first adopted the common-sense rule of permitting comparison of handwriting with properly approved standards. Virginia changed the rule by action of the Supreme Court in 1884. *Hanriot* v. *Sherwood* (1884), 82 Va. 1. Congress changed the rule in the United States courts in 1913. The legislatures of all the other states, with the possible exceptions of Arkansas, North Carolina, Texas and Utah, have by statute abrogated the common-law rule. Indiana was one of the last to adopt the practical and common-sense side of this question. This she did in March, 1913, when the legislature passed an act which provided: ''That in any proceeding before a court or judicial officer of the State of Indiana where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person

shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness.'' §528a Burns 1914, Acts 1913 p. 840. Under this statute, which is a copy of the federal statute, abuses may creep in and justice be defeated, but this possibility is greatly reduced as compared with results under the old rule. With a competent judge and intelligent counsel, no unfairness to either side will result from this modern practice, and truth will be much more likely to prevail.

In the admission of such a paper for the purpose of comparison and not properly in evidence for any purpose, no instrument containing irrelevant

3. matter likely to prejudice the jury should be introduced in evidence on the pretext of comparison. The court should be exceedingly careful not to allow any writing to go to the jury which might possibly improperly influence them in the case on trial, and where there is any matter in the writing that might have that effect, that paper should be excluded.

The right to produce standards of comparison under this statute is equally open to both parties, and the standards are all subject to examination

4. and cross-examination, so that the opportunity for unfair selections is slight. It is not the purpose of the statute that the jury should be required or permitted to make comparison with disputed standards and to settle for themselves the collateral question of the genuineness of the standards which might very often be more difficult than the main question of the genuineness of the writing in issue. The genuineness of the writing offered as a

standard of comparison cannot be proved by comparing it with some other instrument. *Winch* v. *Norman* (1884), 65 Iowa 186, 21 N. W. 511. Before a written instrument can be used as a standard of comparison, its genuineness must be satisfactorily established, either by other evidence or by the admission of the adverse party. 15 Am. and Eng. Ency. Law (2d ed.) 272.

There is some difference of opinion as to what amounts to satisfactory proof. Some courts hold that the genuineness of a standard should be proved by the testimony of a witness or witnesses who saw it written, by the admission of the party, or by other evidence of equal certainty. *Hyde* v. *Woolfolk* (1885), 1 Iowa 159; *Baker* v. *Haines* (1841), 6 Whart. (Pa.) 284, 36 Am. Dec. 224; *Cohen* v. *Teller* (1880), 93 Pa. 123. It has been held in Ohio that, where the standard is not already in the case or admitted to be genuine, its genuineness must be proved by persons who testify directly and positively to its having been written by the party. *Pavey* v. *Pavey* (1876), 30 Ohio St. 600.

Proof by preponderance of the evidence has been held sufficient in Vermont. *Rowell* v. *Fuller* (1887), 59 Vt. 688, 10 Atl. 853. It was held in *Clark* v. *Douglass* (1896), 5 App. Div. 547, 40 N. Y. Supp. 769, that the genuineness should be established by proof so clear that, were it an issue in the case, a verdict would be directed for the paper's genuineness. See, also, *Sankey* v. *Cook* (1891), 82 Iowa 125, 47 N. W. 1077. But in *McKay* v. *Lasher* (1890), 121 N. Y. 477, 24 N. E. 712, it was held that the mode of proof of genuineness is to be regulated by the general rules of evidence applicable to the proof of any handwriting. Most of the statutes enacted upon this subject limited

the comparison to writings "proved to the satisfaction of the judge or court to be genuine."

The Supreme Court of New Hampshire in *State* v. *Hastings* (1873), 53 N. H. 452, in discussing the English statute, said: "Under that statute, the jury probably need not consider the question of the genuineness of the paper 　*　*　*, as the statute seems to make the finding of the judge on that point conclusive; but without such a statute it would seem to be necessary that the evidence of the genuineness of such paper should be introduced to the jury, and then that the jury should find that fact for themselves upon all the evidence. With this modification, we see no reason why this English rule may not be adopted in this state as a plain and just rule, to be followed in all such cases." The same court in *University, etc.* v. *Spalding* (1901), 71 N. H. 163, 51 Atl. 731, 62 L. R. A. 817, citing *State* v. *Hastings, supra,* said: "Of the doctrine involved in the suggested modification, it may be said: (1) It is *dictum*. (2) It is opposed to the whole body of English and American authority. (3) It is contrary to general opinion and policy, as indicated by the whole trend of modern legislation. (4) It is unsupported by any, and is contrary to many, New Hampshire cases. 　*　*　*. (5) It was based upon *State* v. *Ward,* 39 Vt. 225, which has since been repudiated by the same court. *Rowell* v. *Fuller,* 59 Vt. 688. (6) It has been reviewed in Maine and rejected. *State* v. *Thompson,* 80 Me. 194. (7) Text-writers have criticised it. Rog. Ex. Test., s. 138; Laws. Ex. & Op. Ev. 395, 397. Finally, it is as unsound as it is anomalous. If adhered to as a rule, it would make comparison a source of confusion rather than of instruction. Its vices may not be emphasized

by every case, but they are nevertheless inherent and obvious, and should not have judicial sanction. The true rule is, that when a writing in issue is claimed on the one hand and denied upon the other to be the writing of a particular person, any other writing of that person's may be admitted in evidence for the mere purpose of comparison with the writing in dispute, whether the latter is susceptible of or supported by direct proof or not; but before any such writing shall be admissible for such purpose, its genuineness must be found as a preliminary fact by the presiding judge, upon clear and undoubted evidence. * * * The value of comparison as a method of proof being now generally conceded; juries being no longer too ignorant to derive benefit from that source; the danger of spurious specimens and the objections to collateral issues being fully met by requiring the genuineness of the standard to be determined as a preliminary fact by the trial judge, there remains, it would seem, no satisfactory reason for the old limitations and exceptions.''

The famous case of *Doe* v. *Suckermore* (1836), 5 Ad. & Ell. 703, was not to secure the admission of disputed signatures to be passed upon by the jury, but to the end that specimens already established to be genuine might be used as a basis of comparison. This decision was doubtless the causative factor in the passage of the English statute and, in the absence of such statute, the common law of England would doubtless have adjusted itself to the changed conditions, and would be in accord with the modern practical and common-sense rule. In the instant case, no objection was made to the introduction of the alleged genuine signatures on exhibits 10, 11 and 12 upon the

grounds that their genuineness had not been predetermined by the court, or that they had not been proved to be genuine. The objection of appellee rested upon the ground that writings not otherwise in the case and not admitted to be genuine are not admissible for the purpose of comparison, even though first shown to be genuine to the satisfaction of the court. This theory is sustained by the decisions of the Supreme Court and this court prior to 1913, but it is contrary to the statute hereinbefore set out.

The statute of New York, passed in 1880, provided that: "Comparison of a disputed writing, with any writing proved to the satisfaction of the court to be genuine shall be permitted to be made by witness in all trials and proceedings, and such writings and evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." The court of appeals in *People* v. *Molineux* (1901), 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, said: "It is obvious that the purpose of this enactment was to enlarge and not in any wise to narrow the rule established at common law. The latter was generally felt to be too inelastic, as it frequently excluded from the consideration of the court testimony which common experience proved to be helpful. * * *. We think it too clear for extended argument that the 'disputed writing' referred to by the statutes is any writing which one party upon a trial seeks to prove as the genuine handwriting of any person, and which is not admitted to be such, provided that the writing is not inadmissible under other rules of evidence. The statutes were clearly intended to remove the restriction

which at common law limited the comparison of a disputed writing, either with other writings put in evidence for other purposes than comparison, or with standards existing in the minds of witnesses familiar with the handwriting of the person sought to be charged with the disputed writing. The class of disputed writings which may be proved upon the trial of an issue has neither been enlarged nor restricted. The admissibility of such disputed writings depends upon other rules than either the common law or the statutory rules respecting comparison of handwriting. If a disputed handwriting is itself either a fact in issue, or a fact relevant to the issue, it may be proved by the means pointed out by the statutes. If it is neither in issue nor relevant to the issue it must be excluded, not because the statutes of 1880 and 1888 have anything to do with the question, but because, according to fundamental rules, it can have no bearing upon the controversy. * * * The statutes of 1880 and 1888 provide that the comparison of a disputed writing may be made with *any* writing proved to the satisfaction of the court to be genuine. The words 'proved to the satisfaction of the court' are to be construed in the light of the obvious purpose for which these statutes were enacted. At common law a paper properly in evidence for general purposes can be compared with a disputed writing, but only when the genuineness of the handwriting of the former is admitted or proved beyond a reasonable doubt. (Citing authorities.) Since these statutes were designed to amplify and broaden the common-law rule by permitting the use of genuine writings as standards of comparison, even when they are not competent or relevant for other purposes, it must be

assumed that the language prescribing the manner in which the genuineness of such writings is to be established was carefully and deliberately chosen by the legislature. While it is obvious that the words 'proved to the satisfaction of the court' do not invest the trial court with a mere personal discretion which is to be exercised without reference to rules of evidence, it is equally plain that the failure of these statutes to prescribe the precise method or degree of proof necessary to establish the genuineness of a writing for purposes of comparison with a disputed writing renders it necessary to resort to the general rules of the common law for that purpose. Thus the genuineness of a writing may be established (1) by the concession of the person sought to be charged with the disputed writing made at or for the purposes of the trial, or by his testimony; (2) or by witnesses who saw the standards written, or to whom, or in whose hearing, the person sought to be charged acknowledged the writing thereof; (3) or by witnesses whose familiarity with the handwriting of the person who is claimed to have written the standard enables them to testify to a belief as to its genuineness; (4) or by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns. Since common-law evidence is competent to establish the genuineness of a writing sought to be used as a standard of comparison, it is apparent, in the absence of a statutory rule as to the degree of proof to be made, that the general rule of the common law as to the sufficiency of evidence must prevail. In civil cases the genuineness of such a paper must be estab-

lished by a fair preponderance of the evidence and in criminal cases beyond a reasonable doubt. Writings proved to the satisfaction of the court by the methods and under the rules adverted to, may be used as standards for purposes of comparison with a disputed writing, subject, however, to the qualification that writings which are otherwise incompetent should never be received in evidence for purposes of comparison.  *  *  *  We are clearly of the opinion that these statutes are not unconstitutional and that the proper construction of the statutes requires the submission to the jury of the genuineness of the standards with which the disputed writing is compared. The word 'court' in the statutes is used in its generic sense, and includes both judge and jury in a case where a jury is present. It is significant that the statute of 1880, which was obviously copied from the statute of Great Britain enacted in 1854, substitutes the word 'court' for the word 'judge.' We are not aware that it has ever been decided even in England by any court of great authority that the ultimate decision concerning the genuineness of the standards of comparison must not be made by the jury.  *  *  *  We have not been referred to and have not found any decision of this court to the effect that the judge presiding at the trial has the final decision concerning the genuineness of the writings offered as standards of comparison.  *  *  *  As between a construction which would withdraw from the jury the important question of the genuineness of the standards, and a construction which submits their genuineness first to the judgment of the judge and, upon his acceptance of them, ultimately to the decision of the jury, which must find within the rules above laid

down that they are genuine before it can use them, or regard any evidence based upon them, we prefer and are bound to accept the latter construction. The sufficiency of the proof given of the genuineness of the papers offered as standards is a preliminary point to be determined in the first instance by the court before permitting the papers to go to the jury. If the court, having regard to the rules adverted to, adjudge the papers genuine, it then becomes the duty of the jury in its turn, at the proper time, before making comparison of a disputed writing with the standards, to examine the testimony respecting the genuineness of the latter and to decide for itself, under proper legal instructions from the court, whether their genuineness has been established. We are aware that a contrary conclusion respecting the duty of the court to submit the genuineness of the standards of comparison to the jury has been reached in Vermont (*Rowell* v. *Fuller's Estate,* 59 Vt. 688) and apparently in Massachusetts (*Costello* v. *Crowell,* 133 Mass. 352). We are convinced, however, that the sounder rule is the one we have stated. It may be added that comparisons with standards produced in court, whether at common law or under the statutes, may be made by witnesses or by the court or jury without the aid of witnesses.''

''Before a writing can be used as a standard of comparison of handwriting, it must be proved that the specimen offered as a standard is the genuine handwriting of the parties sought to be charged. The question of its admissibility as a standard is to be determined by the judge presiding at the trial, and so far as his decision is a question of fact merely, it is final, that is, not reviewable by the appellate court,

if there is any proper evidence to support it. Exceptions to its admission as a standard will not be sustained unless it clearly appears that there was some erroneous application of the principles of law to the facts of the case, or that the evidence was admitted without proper proof of the qualifications requisite for its competency.'' 11 R. C. L. 626.

The Supreme Court of Massachusetts, in discussing the rule, said: ''The defendant contends that the handwriting of a standard must be proved by direct evidence of the signature, 'or by some equivalent evidence,' and that the only way in which this can be done is either by the testimony of the witness who saw the defendant write it or by the defendant's admission that he wrote it.   *   *   *   But whatever may be the rule elsewhere, it has been said by this court that here the standard shall be proved by 'direct proof of the signature or other equivalent evidence,' and we understand that to be the true statement of our rule.   *   *   *   An examination of the cases in which this language is used will show, however, that the distinction declared is between evidence based solely upon an inspection of the paper, as for instance that given by an expert or one acquainted with the handwriting of the party charged, and who testifies as to the genuineness solely by comparison with another standard or with an exemplar in his own mind, on the one hand, and on the other hand evidence of a different kind having a tendency independent of any opinion as to handwriting to show that the paper was written by the party charged. In other words, you cannot prove a standard by the opinion of witnesses as to the handwriting of the person charged, whether the opinion be based upon comparison with other

writings or upon a knowledge of the party's handwriting obtained in any other way. The evidence to prove the standard must be entirely independent of opinion as to handwriting." *Commonwealth* v. *Tucker* (1905), 189 Mass. 457, 76 N. E. 127, 7 L. R. A. (N. S.) 1056.

The Supreme Court of Illinois in *Stitzel* v. *Miller* (1911), 250 Ill. 72, 95 N. E. 53, 34 L. R. A. (N. S.) 1004, Ann. Cas. 1912B 412, before the common-law rule was changed by statute, said: "The tendency of the legislation, as well as of judicial decisions, is to relax this rule and to enlarge upon its exceptions, or, rather, to permit a more liberal use of comparison with any writing established to be the writing of the party whose handwriting is in issue, whether the writing is otherwise relevant or not."

The facts that the exhibits were found among the papers of the absentee, or that they were returned by the bank to appellee as being checks of the absentee, is not sufficient proof to authorize their introduction in evidence. *Farrell* v. *Manhattan R. Co.* (1903), 83 App. Div. 393, 82 N. Y. Supp. 334. "The genuineness of neither was admitted or conceded or proven without dispute. Consequently comparison was not admissible, even by an expert on the subject." *Mutual Life Ins. Co.* v. *Witte* (1914), 190 Ala. 327, 67 South. 263.

In *First Nat. Bank, etc.* v. *Barker* (1914), 75 W. Va. 244, 83 S. E. 898, in the syllabus written by the court, it is said: "On an issue as to handwriting, nothing but genuine signatures of the person whose signature is in issue, made in the ordinary course of conduct, are admissible in evidence for purposes of comparison,  *  *  *." Courts and jurors are bound to ac-

cept as true that which is indicated by the evidence and which is not contrary to the established facts or reasonable probabilities.    *Quass* v. *Milwaukee Gas Light Co.* (1919), 168 Wis. 575, 170 N. W. 942.   In *Miller* v. *Thompson* (1915), 50 Okla. 643, 151 Pac. 192, the court said: ''The genuineness of the writing or signature made the basis of comparison, and sometimes called the 'standard writing,' must be proved by direct or positive evidence, and cannot be established by comparison.''

In *Williams* v. *Williams* (1912), 109 Me. 537, 85 Atl. 43, the court said: ''Whatever the rule may be in other jurisdictions the general rule adopted in this state is that when the genuineness of handwriting is in question it may be proved by comparison with other handwriting of the party sought to be charged, admitted or proved to be genuine; that such writing is admissible as a standard for the purpose of comparison whether relevant to the issue or not; that before it can be admitted as a standard it must be proved or admitted to be genuine; that the question of its admissibility as a standard is to be determined by the presiding justice, and exceptions to its admission will not be sustained unless it clearly appears that there was some error in law or that the evidence was admitted without proper proof of the qualifications requisite for its competency.''   Citing *State* v. *Thompson* (1888), 80 Me. 194, 13 Atl. 892, 6 Am. St. 172.

Massachusetts adopted the same rule and held that exceptions will not lie to the findings of the presiding justice unless his decision is founded upon error in law, or upon evidence which is, as a matter of law, insufficient to justify the findings.   *Nunes* v. *Perry*

NOVEMBER TERM, 1919.        19

Plymouth Saving, etc., Assn. v. Kassing, Admr.—72 Ind. App. 1.

(1873), 113 Mass. 274; *Costelo* v. *Crowell* (1885), 139 Mass. 588, 2 N. E. 698.

In *Cowboy State Bank, etc.* v. *Roy* (1915), (Tex. Civ. App.) 174 S. W. 647, it is said: ''The general rule is that the genuineness of disputed handwriting may not be determined by the court or the jury by comparing it with other purported handwriting of the party, unless such other handwriting, used as a standard for that purpose, is an admitted signature by the contestant, or has been 'established by clear and undoubted proof; that is, either by direct evidence of the signature (to such other writing), or by some equivalent evidence.' '' *Ashwell* v. *Miller* (1913), 54 Ind. App. 381, 103 N. E. 37, was decided after the passage of §528a, *supra,* but related to a cause tried prior to the enactment of such statute. It was there said that: ''In inquiries involving the authenticity of handwriting, a standard of comparison is not of itself primary evidence of the genuineness or spuriousness of such handwriting, but rather it is a measure, which having been ascertained to be correct, is used to mete out primary evidence on the issue involved. Where the cause is tried by a jury, the court, rather than the jury, determines whether a writing proposed as a standard, is authenticated or may be used as such, and the right to submit the standard as such to the jury does not exist. The evidence based on the standard goes to the jury through the testimony of experts. It therefore follows that in the final determination of the cause, the question of the genuineness of the standard is not submitted to the jury.  *  *  *, other writings admitted to be genuine, and already in evidence for some other purpose, may be submitted to the jury for comparison

with the disputed signature.'' ' Prior to the enactment of such statute, standards of handwriting used by experts for comparison were not submitted to the jury for the purpose of comparison unless such standards were in evidence for some other purpose. This being true, it follows as a matter of course that the question as to the authenticity of the standard used by the expert was a question solely for the court to pass upon. It is somewhat noticeable that our statute is different from the statutes of many states, in that it does not contain the words, ''proven to the satisfaction of the judge or court.'' Its language is: ''Any admitted or proved handwriting of such person shall be a basis for comparison by witnesses or by a jury, court or officer,'' etc.

In *Timmons* v. *Gochenour, Admr.* (1919), 69 Ind. App. 295, 117 N. E. 279, the genuineness of the signature of one Scott was in controversy. On the cross-examination of a witness he was handed a paper purporting to bear the genuine signature of Mr. Scott, and asked whether such signature and the signature of said Scott on one of the notes in controversy were both written by the same person. Objection was made to the question, '' 'for the reason that the exhibit shown the witness has not been introduced in evidence in this case and not proper to be used as a comparison until it becomes competent evidence in the case.' '' After quoting §528a Burns 1914, *supra,* the court said: ''The objection is based wholly on the proposition that the paper in question had not been introduced in evidence in the case. The statute makes provision for any admitted or proved handwriting. The handwriting might be proved or the signature admitted to be genuine, without placing the instrument in evidence.''

We believe the true rule deduced from the authorities to be that the genuineness of a "standard" writing may be established (1) by the admission 6. of the person sought to be charged with the disputed writing made at or for the purpose of the trial or by his testimony; (2) by witnesses who saw the standards written or to whom or in whose hearing the person sought to be charged acknowledged the writing thereof; (3) by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns. This is the rule adopted by the Court of Appeals of New York in *People* v. *Molineux, supra,* with the exception that the court there held that such standard might also be proved by witnesses whose familiarity with the handwriting of the person who is claimed to have written the standard enables them to testify to a belief as to its genuineness, that is, that its genuineness might be proved by expert testimony. We, however, are not ready to adopt this last doctrine. We believe the better rule to be that such standards cannot be proved by expert testimony, and that before they can be submitted to the jury for comparison the proof of their genuineness should be clear so as to raise no collateral issue.

Appellee cites *Lay* v. *Wissman* (1873), 36 Iowa 305, and *Shannon* v. *Castner* (1902), 21 Pa. Super. Ct. 294, to the proposition that: "The determination 7. by the court of the question of the genuineness of a written signature upon the evidence of experts, by comparison of handwriting, is entitled, on appeal, to the same consideration as the verdict

of a jury.'' The objection to appellee's proposition is that in such cases the jury was not permitted to see the standard or to pass upon the question of the genuineness of the standard for any purpose. Such standards were only submitted to the expert. It follows as a matter of course that the question as to the genuineness of the standard was exclusively a question for the court to determine, and, that being true, his decision must be given the same consideration on appeal as the verdict of a jury. But under a statute like ours, where the standard is not only submitted to the expert for comparison, but is also submitted to the jury for comparison, the question whether the genuineness of the standard has been sufficiently proved to authorize its submission to the jury, or to an expert for comparison, is a question for the court, but when admitted, the question as to its genuineness is ultimately a question of fact for the jury. *State* v. *Ryno* (1904), 68 Kan. 348, 74 Pac. 1114, 64 L. R. A. 303.

In the instant case the court sustained an objection when the alleged standards were offered in evidence for the purpose of permitting them to be submitted to the jury for comparison. The question for our determination is whether the appellant has proved the genuineness of the signature of the absentee on said exhibits 10, 11 and 12 with such a degree of certainty that it was error as a matter of law for the court to refuse to permit them to be introduced in evidence, and shown to the jury for the purpose of comparison. These exhibits were checks, No. 10 being dated January 2, 1909, Nos. 11 and 12, January 7, 1909, drawn by appellant loan company on the Indiana National Bank payable to

the order of the absentee. On the back of each appeared in writing the name, "Wm. Bretthauer." It appears from the evidence that these checks were drawn in the ordinary course of business; that they were indorsed by the absentee and paid by the bank in the ordinary course of business. Mr. Katterhenry testified that he was present at the time, and saw the absentee write his name on the back of each of these checks. There was no other evidence upon the question of genuineness of the signature of the absentee. Appellee on the trial made no objection to their introduction in evidence upon the ground that the signature had not been proved to be the signature of the absentee, nor is there any claim of that character made on appeal, and under the evidence we do not see how any such claim could be made. Mr. Katterhenry was not in any manner disputed or impeached. If appellee on cross-examination of such witness or in any other manner known to the law had raised any question as to the truthfulness of the testimony given by the witness or as to the genuineness of the signature, so that this court could say that the evidence was conflicting upon the question of the genuineness of the standards offered, or that an issue was presented as to the genuineness of the signature, we would not weigh the evidence in determining whether the court erred or did not err in sustaining appellee's objection and in refusing to permit said exhibits to be submitted to the jury for comparison. The evidence shows without conflict that the signature of the absentee on each of said exhibits was genuine. Each of them should have been admitted in evidence. The court erred in refusing to permit them to be shown to the jury for the purpose of comparing the

signature of the absentee on them with the alleged signature of the absentee on the note in controversy. The only standard of handwriting admitted in evidence was exhibit 19, an identification card which the absentee made out and signed in July, 1905, when he opened an account in the savings department of the Indiana Trust Company, almost four years prior to the time when the absentee wrote his name on exhibits 10, 11 and 12. It is well known that experts on handwriting hesitate and often refuse to give an opinion as to the genuineness of a signature when he has but one standard signature for comparison. It is always well in such cases to have a number of standards for comparison. It follows from what we have said that the court erred in overruling the appellant's motion for a new trial.

Judgment is therefore reversed, with instructions to grant a new trial, and for further proceedings not inconsistent with this opinion.