AARON M. OLIPHANT et al.

*v.*

WILLIAM RICHMAN.

[Filed February 1st, 1904.]

1. A lease of land at the edge of a mill pond, "for the purpose of building and maintaining an ice house thereon," gives the lessee no right to cut ice on the mill pond.

2. The lessor's permitting the lessee to take ice from the pond gives the lessee a mere license, revocable at the lessor's pleasure.

3. On application for injunction to restrain trespass, it must be shown that the complainant's right or title is settled, and that he will suffer irreparable damage unless relief be granted.

On application for a preliminary injunction on bill, answer and affidavits.

*Mr. Jonathan W. Acton,* for the complainants.

*Mr. William T. Hilliard,* for the defendant.

GREY, V. C. (orally).

The bill is filed only to restrain the defendant from cutting and removing ice on a mill pond in the county of Salem. It contains a copy of a lease made by the complainant to the defendant of a piece of land twenty feet wide by twenty-four feet long, the description of which is as follows: "A certain lot of land on the east side of the road leading from Sharptown to Salem county almshouse, at the edge of the mill pond, and being twenty by twenty-four feet, for the term of ten years, with the privilege of renewal for the purpose of building and maintaining an ice house thereon." There is a further clause in the lease, which is in these words: "That the building to be erected on said ground shall not be used for any other purpose than as an ice house, and if used for any other purpose than as an ice house, then this lease to terminate and become void." The complainants allege that the defendant has cut, or is about to cut, ice from the complainants' mill pond, near the leased premises.

The defendant has answered. He admits the lease to have been made as stated in the bill of complaint or the copy annexed, but he says that the lease was intended by the parties to express not only a grant of land but also of the privilege to use the ice from the mill pond, outside of the granted premises, for the purpose of filling the ice house to be built on the land. In addition affidavits are submitted to show and the answer alleges

that it has been the custom of the defendant, subsequently to the making of the lease from a period near the date of the lease (which was December 29th, 1896) until the past year, to fill his ice house from the complainants' pond; that the complainants made objection last year, and since that time the right to fill the defendant's house from the ice on the mill pond has been the subject of difficulty and disagreement between the parties.

It seems to me this matter is controlled by fundamental principles. The lease, undisputed by both parties, expresses no grant of any right to cut ice from the complainants' mill pond. Its terms are perfectly clear, a grant of a piece of land lying at the edge but including no part of the mill pond, with limitations upon the right of the grantee or lessee to use the demised land for any purpose other than an ice house.

That is the meaning and extent of the words used in the lease and no greater effect can be ascribed to it.

There is neither ambiguity in the expressions of the lease nor any doubt of the extent of the lands or privileges granted. If such were the case the acts of the parties in taking and using the premises might be invoked to satisfy the doubts and interpret the real meaning of the grant.

The fact that the lessee was permitted to take ice from the pond must necessarily, therefore, have been a mere license—that is, the owner of the pond permitted the lessee to take ice from his mill pond just as he might have permitted him to take any other benefit. The mill pond belongs to the lessor. It is his property. He has a right to allow others to use it as long as he chooses to do so and to stop them whenever he wishes. The lessee, in cutting ice for a number of years from the pond, accepted courtesies extended but acquired no rights. The fact that a man permits another to use his lands once or twice, or twenty times, creates no obligation upon the owner to continue so to do.

If the complainant permitted the defendant to use the mill pond for twenty years, he could not be obliged to permit him to use it for twenty-one, for the reason that a person who accepts a benefit or courtesy in another's lands or waters, extended to him

by the free choice of the owner, does not exercise his privilege in a hostile way, asserting title or claim, but in acknowledgment of the owner's title. The defendant having accepted the extension of a courtesy by the voluntary action of the lessor, he cannot afterwards set it up to bind the lessor to continue to extend it beyond the time when he chooses to revoke it.

In these applications for injunction there are two elements which must be shown. One is the settled right or title of the complainant, the other is that this right in the thing in dispute will be irreparably damaged if the relief be not granted.

I think it is entirely clear that the first element in the case, as to the established right of the complainant, is settled, and settled adversely to the defendant's claim.

As to the other element. Irreparable damage does not mean that the complainant must show that all his financial transactions will be ruined unless the relief sought is granted. It means that with reference to the particular right or property referred to in the bill of complaint the complainant will be irreparably deprived of it unless the relief sought is granted.

The situation is that the defendant claims the right and insists upon the exercise of it to go upon the complainants' land and use it as he (the defendant) chooses, against the complainants' opposition. There is no limitation apparently put upon the defendant's exercise of that privilege. He holds the ice house near the complainants' pond, and he claims the right against the complainants' prohibition to go upon the complainants' pond, cut ice and fill his own ice house.

I do not quite see why the limitation should be to the filling of the ice house, because, as I have already determined, the grant of the piece of land was for the purpose of erecting an ice house, and it does not convey the right to fill that house from the ice on the pond. If the defendant has a right to cut ice on the pond at all, he has a right to cut all the ice. If he does not choose to exercise it that is another matter, but nothing defines any limitation confining him to the quantity which will fill the ice house.

If the defendant, carrying out his claim, cuts ice from the

pond this year, he will have the same right to cut it next year. The complainant, to get any remedy, would thus be compelled to bring many damage suits. It is quite obvious that the complainants' right being clearly established, they ought to have the protection of this court from such vexatious and repeated suits, thus settling the whole dispute in one litigation.

The argument advanced by the defendant's counsel that the complainants may get ice somewhere else on the pond than in the neighborhood of the defendant's ice house, it seems to me, is not pertinent at all. An owner is not called upon to submit to losing a portion of his property, because he can conveniently or profitably use other portions. He has an absolute right to determine, even unreasonably, whether he will keep it or part with it, and under what conditions he will permit another to enjoy it. It is obvious enough that no one can rightfully say to an owner, "You ought to permit me to use and enjoy this portion of your property, because in another part of it you can get all the benefit from it which you need." Such a proposition cannot be maintained.

I think, therefore, that the complainants have shown not only an established right but also, when properly understood, a threatened condition of irreparable damage. A preliminary injunction ought to go according to the prayer of the bill.