# CHARLESTON

FIRST NATIONAL BANK OF PENNSBORO V. BARKER *et als.*

Submitted November 10, 1914.   Decided December 8, 1914.

1.  JUDGMENT—*Conclusiveness—Effect of Continuance.*

    Finality of an office judgment is prevented by a continuance at the instance of the plaintiff, at the term at which it would have become final, acquiesced in by the defendant.  (p. 245).

2.  EVIDENCE—*Handwriting—Standard of Comparison.*

    On an issue as to hand-writing, nothing but genuine signatures of the person whose signature is in issue, made in the ordinary course of conduct, are admissible in evidence for purposes of comparison, by virtue of chap. 39 of the Acts of 1907, Code, ch. 130, sec. 21a, serial sec. 4877.  (p. 245).

3.  SAME—*Handwriting—Standard of Comparison—Refusal to Strike Cross-Examination.*

    It is error to refuse to strike out the cross-examination of a non-expert witness, founded upon papers bearing the name of the person whose hand-writing is in question, affixed by persons other than him, or affixed by himself for the purpose of such cross-examination.  (p. 245).

4.  SAME—*Admissibility—Perpetration of Similar Act.*

    To prove, in a civil action the perpetration of a criminal or fraudulent act by any person, evidence of other similar acts done by him, conduct on his part, importing the same and his admissions thereof are admissible, provided they are so connected in time, purpose and character as to indicate a scheme, plan or design on his part, broad enough to include the act in question.  (p. 248).

5.  TRIAL—*Deliberations of Jury—Taking Papers to Jury Room.*

    The jury may, by leave of the court, take to their room all papers properly put in evidence on the trial.  (p. 249).

6.  BILLS AND NOTES—*Plea of Non Est Factum—Refusal to Strike—Issue of Forgery.*

    In an action on a promissory note, in which forgery is relied upon as a defense, it is not error for the trial court to refuse to strike out a plea of *non est factum,* denying the hand-writing of the signature and verified by affidavit.  (p. 249).

Error to Circuit Court, Ritchie County.

Action of assumpsit by the First National Bank of Penns-

boro against John Barker and others.   Judgment for defendants, and plaintiff brings error.

*Reversed, and Remanded for New Trial.*

*S. A. Powell* and *Adams & Cooper,* for plaintiff in error.

*L. Wilson, L. H. Barnett,* and *Robinson & Prunty,* for defendants in error. .

POFFENBARGER, JUDGE :

On the issue raised by a plea of *non est factum* in an action of assumpsit for the recovery of $400.00 and interest thereon and protest fees, apparently due upon a negotiable promissory note, a verdict for the defendant, Wilson, was found, which the court carried into judgment.   On the writ of error, there are numerous complaints, most of which pertain to rulings of the court in the trial of the issue raised as aforesaid, but one is founded upon its refusal to enter a judgment upon an alleged default.

Wilson was one of seven defendants sued on a note signed on its face by John Barker, payable to D. H. Barker, Maggie Barker and R. F. Evans and bearing on the back thereof the names of the payees and the following additional ones:   Perry Fortney, S. E. Johnson and L. Wilson.   Process was served upon all of them, and the declaration, accompanied by the statutory affidavit as to the amount due, was filed at April rules 1913.   At the June term, there was a continuance on the motion of the plaintiff, acquiesced in by the defendants. At the February term 1914, the action was abated as to John Barker on account of his death, and discontinued as to all of the other defendants, except L. Wilson and Perry Fortney.   A motion for judgment against them was overruled and Wilson was permitted to plead and file a counter affidavit.

If the cause of action be assumed to have been one in which there was no occasion for a writ of inquiry, the agreed continuance at the June term 1913, prevented finality of the office judgment and justified the action of the court upon the motion for judgment.   *James Sons & Co.* v. *Gott and Ball,* 55 W. Va. 223, applying the principle of waiver.

To sustain the issue of forgery, raised by the plea of *non est factum,* a great deal of evidence was admitted over objec-

tions of the plaintiff and there are exceptions to the action of the court in excluding evidence offered.

On the cross-examinations of the witnesses for the plaintiff, who had expressed the opinion that Wilson's name on the back of the note was in his hand-writing, were required to say whether numerous apparent signatures of Wilson on slips of paper and checks were, in their opinion, genuine. On some of the slips, Wilson had written his name for use in testing the knowledge and capacity of the witnesses. Others bore his name as written by other persons for the like purpose. The court excluded the slips on which persons other than Wilson had written his name, but refused to exclude those on which he had written it, until the completion of the taking of the testimony, when they also were excluded. An exception was taken to the overruling of a motion to strike out such parts of these cross-examinations as were founded upon the slips. Certain paid and cancelled checks bearing the signature of Wilson and two others bearing his name in the hand-writing of other persons were used in the same way and for the same purpose as the slips, and a motion to exclude such parts of the cross-examinations as pertained to them was overruled and another exception was taken to the action of the court on that motion.

These motions should have been sustained. The witnesses were not experts and did not testify as such. Application of a test of skill in hand-writing to them such as, according to some authorities, may be made in cases of expert hand-writing witnesses, is regarded as unfair to the witness and also the party by whom he was introduced. Of course, he may be required, on cross-examination, to compare genuine signatures and consider differences or variations, by way of test as to the value of his opinion respecting the signature in question. In such case, no advantage is taken because the range of cross-examination is kept within the true standards of comparison, genuine signatures. The introduction of fictitious signatures or signatures prepared for the occasion and abnormal by design sets up a false standard and works a deception upon the witness, inconsistent with the principle of fairness, governing judicial proceedings. *Massey* v. *Farmers' Bank,* 104 Ill. 332; *Bruner* v. *Wade,* 84 Ia. 698; *Andrews*

v. *Hayden's Adm'r,* 88 Ky. 455; *Van Wyck* v. *McIntosh,* 14 N. Y. 439; *Wilmington Bank* v. *Wasto,* 59 Atl. 241; Chamberlayne's Mod. L. Ev. sec. 2271. For the same reason, the court should have excluded the cross-examination based upon the six checks two of which were not in the defendant's handwriting, and also said two checks.

The contention that the witnesses were experts is not well founded. By way of introduction, one of them was shown to have been president of the plaintiff bank at the time of its purchase of the note for which the one in question was taken in renewal, and he qualified by showing his knowledge of Wilson's hand-writing and the sources thereof. Nothing further was given in evidence as matter of his qualification. The other was a bank cashier of nearly fifteen years experience and former clerk of a circuit court and deputy clerk of a county court, and had ''come in contact'' with hand-writing ''practically all'' of his life. Expert capacity on the part of this witness may have been thus shown, but he did not testify as an expert. In his examination in chief, he made no comparison of the disputed signature with others and based his opinion solely on his personal knowledge of Wilson's hand-writing.

To prove conduct on the part of the deceased John Barker, importing forgery of Wilson's name on the note in controversy, other notes and papers apparently signed by Wilson, but the genuineness of which he denied, were admitted. Some of these were orders to Wilson's post master, directing delivery to Barker of mail for Wilson from certain banks, one of which is the plaintiff. Similar mail delivery orders purporting to have been signed by R. F. Evans, one of the alleged payees of the note here in suit, were admitted, and Evans was permitted to deny the signature to them. Barker had personally given these orders to the postmaster. • A grandson of Wilson was permitted to testify that, while he was in the post office, on a certain day, Barker called for Wilson's mail and the wife of the postmaster, seeing the witness in the room, refused delivery to Barker, observing that the witness could take it over, and handed it out to him, whereupon Barker grabbed the letter and went out tearing it open. The

.witness followed him and gathered up the pieces of the notice of protest, which were admitted in evidence with his testimony, and that of the post office clerk. The notice related to a note other than the one sued on here, but it was directed to Wilson. In this connection, the testimony of a witness to a conversation between Barker and Wilson about the notice was admitted over objection. Other witnesses were permitted to testify to their having seen Barker sign the name of Wilson, among others, on blank notes and also to his admission of the forgery of notes of persons in the community, including Wilson. The right to have Evans and Mrs. Johnson deny their signatures on the note, as witneses in the trial, was challenged by exceptions. Exceptions were noted to the ad-.mission of other testimony similar in character to what has just been detailed.

Upon an inquiry as to the intent with which an admitted act was done, evidence of other similar fraudulent or crim-. inal acts of the same person is admissible, even though such acts are distinct and isolated in character and few in number. When, however, the issue is whether the accused party did the alleged fraudulent or criminal act, such independent or isolated similar acts are inadmissible. But, if the similar acts are numerous, closely connected in time and have features common to the one in question, tending to make out a case of design or purpose on the part of the accused person, broad enough to include the disputed act, they are admissible. Wigmore on Ev. sec. 304. This exception to the general rule was recognized in *State* v. *Huffman,* 69 W. Va. 770. That was a criminal case, but the general character of the issue there was the same as it is here, namely, one of identity, whether a certain person had done a certain criminal act, not the intent with which he did it.

Here the tendency of the evidence in question is to prove Barker's frequent and general use of the names of his neighbors, without their knowledge or authority, as a means of securing money in very considerable sums from three or four neighboring banks, and his forgery and use of mail delivery orders for concealment of his criminal acts. It included in its tendency his admission of such practice and his actual writing of the names on blank notes prepared for use at such

banks. Moreover, all these transactions, the making and utterance of the notes and mail delivery orders put in evidence, the admissions, the snatching of the notice of protest at the post office and the affixing of names to blank notes, occurred within a limited period of time and less than a year before the date of the note sued on.

In support of some of the exceptions, the rule inhibiting impeachment of negotiable notes in the hands of *bona fide* holders by subsequent admissions of the makers, is invoked, but it does not apply. The $175.00 note to which the torn notice of protest pertains and others as to which admissions were proved are in the case only as evidence of the general scheme or design of procuring money by forgery. In other words, they are only collaterally involved. No finding of the jury in this action as to their validity would be admissible in actions brought upon them.

Such papers as were properly admitted in evidence could, by leave of the court, be taken into the jury room by the jurors. Code, ch. 131, sec. 12; *State* v. *Stover,* 64 W. Va. 670; *State* v. *Lewis,* 69 W. Va. 472; *Cobb* v. *Dunlevie,* 63 W. Va. 398.

Though the evidence of forgery may have been admissible under the general issue and the plea of *non est factum,* therefore, unnecessary, the court did not err in its refusal to reject it; for it, together with the verification thereof, amounted to a denial under oath of the signature of the defendant, so as to enable him to impeach it by evidence. The plea specifically denies the signature and is sworn to. Such a denial in some form is a necessary condition precedent to the introduction of impeaching evidence. Code, ch. 125, secs. 39 and 40; *Maxwell* v. *Burbridge,* 44 W. Va. 248. The general issue in assumpsit is very broad, Hogg's Pl. & F., p. 177, but the statutory requirement of denial, under oath, of the signature of a paper pleaded, as a basis for impeaching evidence, seems to permit, if not actually to require, the plea of *non est factum* in all such cases.

For the errors noted, the judgment complained of will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, and Remanded for New Trial.*