FAKOURI v. CADAIS et al.

No. 10957.

Circuit Court of Appeals, Fifth Circuit.

Feb. 22, 1945.

Rehearing Denied May 16, 1945.

---

Edward Dubuisson, of Opelousas, La., for appellant.

Wade O. Martin, Jr., and George M. Wallace, both of Baton Rouge, La., and John W. Lewis and Seth Lewis, both of Opelousas, La., for appellees.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellees, citizens and residents of Brazil and alleging themselves to be the sole heirs at law of Elias Mansaur, deceased, brought this action against appellant, a citizen and resident of the State of Louisiana, and constituted the universal legatee under the last will and testament of said decedent duly probated, to have said will, the judgment of probate, and the judgment putting the appellant in possession of decedent's estate, decreed null and void, and for judgments recognizing appellees as the sole heirs of decedent, and as such entitled to the possession of his estate. From a judgment decreeing the will null, setting aside the probate thereof, and recognizing appellees as the heirs at law of the decedent and as such entitled to the possession of his estate, appellant prosecutes this appeal.

Appellant here contends:

(1) That the court below was without jurisdiction of the subject matter;

(2) That the court erred in permitting the appellees to introduce, over appellant's objection, fifteen documents purporting to show their capacity to sue and stand in judgment, their citizenship, and their heirship;

(3) That the court erred in holding the will invalid; and,

(4) In the alternative, that the court erred, if its judgment annulling the will is correct, in recognizing appellees as the sole heirs of decedent and as such entitled to his estate, instead of referring the matter back to the State probate court for further proceedings.

Appellant secured a supersedeas, in keeping with the court's order, by executing a personal bond without surety and depositing as security, with the court's approval, Certificates of Indebtedness of the United States of America, payable to bearer; Federal Farm Mortgage Corporation Bonds, payable to bearer; and Treasury Bonds of the United States of America, payable to bearer, of an aggregate face value of $75,000.

Appellees moved to dismiss the appeal on the grounds, first, that under Rule 73(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the stay of judgment on appeal may be had only upon filing, with the court's approval, a supersedeas bond "which shall have such surety or sureties as the court requires," and that no provision is made in this Rule for depositing cash or securities in lieu of a surety or sureties; and, second, that if securities in the form of Government bonds could be deposited in lieu of a surety bond, then the appellant had not complied with the order of the court because the securities deposited were: (1) Certificates of Indebtedness of the United States (2) Federal Farm Mortgage Corporation Bonds; and (3) Treasury Bonds of the United States.

The Rules of Civil Procedure clearly indicate a general policy to disregard technicalities and form, and to determine the rights of litigants on the merits. To this end the Rules are liberally construed. In the various statutes superseded by Rule 73(d), the term "security" is used instead of the term "surety." For examples see Bond in error and on ap-

peal, 28 U.S.C.A. § 869, "good and sufficient security"; Supersedeas, 28 U.S.C.A. § 874, "Security required by law." The two terms as used in statutes providing for bonds are generally interpreted as interchangeable, and we think the term "security" in prior laws is synonymous with the term "surety" in Rule 73(d).

Under Title 6 U.S.C.A. § 15, wherever by law or regulations made pursuant thereto a person is required to furnish a bond with surety or sureties, such person may in lieu of such surety or sureties deposit as security, with the approval of the official having authority to approve, United States Liberty Bonds and other bonds or notes of the United States in a sum equal at their par value to the amount of the bond required to be furnished; and the phrase "bonds or notes of the United States" shall be deemed to mean any public debt or obligation of the United States and any bond, note, or other obligation that is unconditionally guaranteed as to both interest and principal by the United States.

▉ The securities furnished by appellant fall within the provisions of this law, which clearly are supplementary to Rule 73 (d). We think the court below was authorized to approve the personal bond of the appellant with the securities furnished.

▉ Appellees further complain that appellant failed to furnish or to file with the clerk of the court below, along with the bonds deposited as security, "an agreement authorizing such official to collect or sell such bonds or notes so deposited in case of any default in the performance of any of the conditions or stipulations of such penal bond."[1] As pointed out, the securities are payable to bearer, and the personal bond given by the appellant itself provides that failure on the part of the appellant to satisfy the judgment rendered against him on appeal, including costs, etc., shall be satisfied out of the proceeds of said securities. This is authority for converting the bonds into cash; and, since they were payable to bearer, no agreement authorizing the sale from appellant was necessary. The motion to dismiss is overruled.

▉ Appellant's contention that the court below was without jurisdiction to set aside a will and the decree of a probate court ordering its execution and placing him in possession of the estate under the will is without merit. The correct rule, we think, is stated in 35 Corpus Juris Secundum, Federal Courts, § 12, p. 794, as follows: "* * * Where a state, by statute or custom, gives to parties interested the right to bring an action or suit inter partes, either at law or in equity, to annul a will or to set aside the probate, the courts of the United States, if diversity of citizenship and a sufficient amount in controversy appear, can enforce the same remedy, * * *." See also to the same effect Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664.

▉ Under Louisiana law, the probate of a will and an order of the probate court for its execution are preliminary proceedings necessary for the administration of the estate, and are not binding on those who are not parties to them. When a testament with probate becomes the subject of controversy and suit is brought to set both aside, as here, the relief sought is not a probate action but an independent suit triable in a court of ordinary jurisdiction. Louisiana Code of Practice, Art. 983; O'Donogan v. Knox, 11 La. 384; Sharp v. Knox, 2 La. 23. The rule established by these old cases has been consistently followed and is applied by the courts of Louisiana today.

In Gaines v. Fuentes, 92 U.S. 10, 21, 23 L.Ed. 524, a suit to annul a will and a decree of probate by a Louisiana court, the Supreme Court said: "There are, it is true, in several decisions of this court, expressions of opinion that the Federal courts have no probate jurisdiction, referring particularly to the establishment of wills; and such is undoubtedly the case under the existing legislation of Congress. The reason lies in the nature of the proceeding to probate a will as one in rem, which does not necessarily involve any controversy between parties; indeed, in the majority of instances, no such controversy exists. In its initiation all persons are cited to appear, whether of the State where the will is offered, or of other States. From its nature, and from the want of parties * * *, the proceeding is not within the designation of cases at law or in equity between parties of different States, of which the Federal courts have concurrent jurisdiction with the State courts under the Judiciary Act [1 Stat. at L. 73]; but whenever

---

[1] 6 U.S.C.A. § 15.

a controversy in a suit between such parties arises respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the Federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between the parties."

To the same effect, see Sutton v. English, supra; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33–43, 30 S.Ct. 10, 54 L.Ed. 80; McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762; O'Connor v. Slaker, 8 Cir., 22 F.2d 147.

■ Appellant further contends that, in the proceedings under which the will was probated, appellees were represented by an attorney for absent heirs appointed by the court. In speaking of the function of an attorney for absent heirs, the Supreme Court of Louisiana in Mix's Absent Heirs v. Mix's Executor and Legatees, 15 La. 66, 68, said: "* * * General authority 'to take care of the interests of the absent heirs and to oppose everything which may prejudice them,' does not embrace the right standi in judicio, for any other purpose. His functions appear to us essentially conservative, and, in our opinion, the legislature never intended to authorize him to originate litigation either among the heirs themselves, or between them and the legatees, and that a judgment pronounced in such a case, could not have, as to them, the authority of res judicata."

Appellees lay claim to the decedent's estate as children of a predeceased brother of decedent who resided in the Republic of Brazil. The fact of such residence, the fact that appellees are legitimate children of the predeceased brother of the testator and that their mother was their duly qualified tutrix and legal representative and had authority to prosecute this suit and stand in judgment in their behalf, was sought to be established by fifteen certified copies in Portuguese of original documents located in the State of Brazil. Objection was made that "not one of the certified copies * * * contained a certificate that the certifying official was the legal custodian of the original document of which the document offered purported to be a copy." Appellant, in the court below and here, argued that the certified copies in Portuguese were not authenticated in accordance with the requirements of Rule

44(a) of the Federal Rules of Civil Procedure; that they were made by one of plaintiffs' attorneys or an employee residing in Brazil who was not called to identify them; and that the English translation did not include a translation of the Portuguese language on the reverse side of the copies.

■ The record shows that the Brazilian Consul at New Orleans recommended a Mrs. Odette J. Hemenway to verify the translations offered in evidence. As a witness she testified that she had been employed by the War Department to make translations of Brazilian and Portuguese and French; that she spoke French, Portuguese, and English, and read and wrote English and Portuguese fluently; that Portuguese is the language of Brazil where she was born and reared; that she studied Portuguese in school and spoke Portuguese in her home; that she had been graduated from a convent in Brazil after completing a course equivalent to two years in a junior college in America; and that she learned English in the United States where she has been for the past twenty years. Under these circumstances the court below held, and we think correctly, that she was a competent witness. She testified that she had checked the translations and found them correct. On being recalled to the witness stand, she translated from Portuguese into English portions of the documentary evidence that had not been translated.

Rule 44 of the Federal Rules of Civil Procedure provides:

"(a) An official record or an entry therein, when admissible for any purpose may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. * * * If the office in which the record is kept is in a foreign state or country, the certificate may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent or by any officer in the foreign service of the United States stationed in the foreign state or country in which the record is kept, and authenticated by the seal of his office.

*    *    *    *    *    *    *

"(c) This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."

672

It is argued that the documents ·offered in court were not certified and authenticated in accordance·with the requirements of the above Rule.

Rule 44 should be read in connection with Rule 43(a). This Rule provides: ":(a) * * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the .courts of general jurisdiction of the state in which the United States Court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. * * *"

The language of Rule 43(a) is all-embracing; it covers all evidence, documentary as well as oral.

[▮] In the State courts of general jurisdiction in Louisiana the rules of evidence on the subject of authentication of foreign documents such as the ones under consideration are set forth in two State statutes.[2] Under these statutes the documents in question were admissible, and under Rules 43(a) and 44(c) the court below properly admitted the documents in evidence.

The contents of these documents are not in dispute and prove the Brazilian citizenship of appellees; the marriage of their father to their mother, and that they are the issue of the marriage; that their mother duly qualified as their tutrix, and had authority to prosecute this suit in their behalf. It was admitted that appellees' father was the brother of the testator, and the proof established appellees as the testator's sole heirs at law.

This brings us to the real issue, the validity of the will. It is what is known in Louisiana as the nuncupative testament by public act.[3] The will is attacked on the ground that it fails to comply with the law in that it does not state (1) that the will was dictated to the notary and by him written down as dictated in the presence of the witnesses, and (2) that the cause which prevented the testator from signing his name was not set forth as required by statute. The will is .in words and figures as follows:

"State of Louisiana, Parish of St. Landry: Before me, William Alexander Robertson, a Notary Public duly commissioned, qualified and sworn in and for the State and parish above written, and in the presence of J. Austin Perkins, Odon Andrus and Alex Robertson, Jr., three competent witnesses above the age of sixteen years, all residents of above parish and State, personally came and appeared Elias Mansaur, a resident of Opelousas, above parish and State to me and said witnesses well known, who declared to me, notary, in the presence and hearing of said witnesses that he desired to make his last will and testament, and that he wanted me, notary, to write down said testament at his dictation, and he, said Elias Mansaur, dictated to me, notary, this his last will and testament, and I, notary, received same from his dictation and wrote same down as it

2 Act La. No. 164 of 1898, § 1, Dart's Statute § 2031 and R.S.La. § 1436, Dart's Statute § 2032.

3 Civil Code, Art. 1578: "The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.

"This testament must be dictated by the testator, and written by the notary as it is dictated.

"It must then be read to the testator in presence of the witnesses.

"Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interrup-

tion, and without turning aside to other acts."

Civil Code, Art. 1579: "This testament must be signed by testator, if he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."

Civil Code, Art. 1595: "The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."

Civil Code, Art. 1647: "Nuncupative testaments received by public acts do not require to be proved, that their execution may be ordered; they are full proof of themselves, unless they are alleged to be forged."

was dictated to me, in words as follows, to-wit:

" 'This is my last will. I hereby revoke my previous will.

" 'I give and leave all of my property real and personal to my cousin John Fakouri.'

"This last will and testament of Elias Mansaur was dictated to me by said testator in English, and was reduced to writing by me, Notary, as dictated by said testator.

"I, notary, then read above will to said testator, in the presence and hearing of said witnesses, and said testator declared that he was satisfied therewith and that it correctly expressed his intended dispositions.

"The whole of this was dictated, received, transcribed and read and signed at one time at the residence of John Fakouri on Main Street in Opelousas, La., between the hours of four and five o'clock in the afternoon of this the twenty-first day of July, A. D. Nineteen Hundred and Forty, all without turning aside to any other act and without any interruption or diversion. Said testator declared to me notary that on account of illness he was unable to write or sign, and signed by his ordinary mark. Error in writing Fakouri for Mansaur at close of act corrected at time of signing (signed) Elias (his X mark) Mansaur, Witnesses: J. Austin Perkins, Odon Andrus and Alex Robertson, Jr., Wm. Alex Robertson, Notary Public."

It will be noted that it is expressly stated that the testator, in the presence and hearing of three competent witnesses, residents, as was the testator, of the Parish of St. Landry and the State of Louisiana, declared to the notary that he desired to make his last will and testament and that he wanted him to write down said testament at his dictation. The will then recites that the testator dictated to the notary his last will and testament and that the notary received same from his dictation and wrote same down as it was dictated; but the will does not state that the notary in the presence of the witnesses received the testament and wrote it down as dictated. Following a disposition of the testator's properties, the will recites that it was dictated to the notary by the testator in English and was reduced to writing by the notary as dictated to him by the testator; that the notary then read the will to the testator in the presence and hearing of said witnesses; and that said testator declared that

he was satisfied therewith and that it correctly expressed his intended disposition. Then follows: "The whole of this was dictated, received, transcribed and read and signed at one time * * * between the hours of four and five o'colck in the afternoon * * * without turning aside to any other act and without any interruption or diversion."

Appellant urges that the statement: "The whole of this was dictated, received, transcribed and read and signed at one time * * * all without turning aside to any other act and without any interruption or diversion" discloses that the will was dictated and reduced to writing as dictated in the presence and hearing of the witnesses. If this conclusion is to be reached, it must be inferred from the language of the will, not from anything expressly stated therein. The will itself refers to certain things done in the presence and hearing of the witnesses: the first, that the testator stated in the presence and hearing of the witnesses that he desired to make his last will and testament, and wanted the Notary to write the testament down at his dictation; the second, that the will when written was read to the testator in the presence and hearing of the witnesses. Specific reference being made to things done in the presence and hearing of the witnesses may indicate that things done without such reference were done out of the presence and hearing of the witnesses, otherwise the presence of the witnesses would have been mentioned.

In Louisiana a will of this type makes full proof of itself. Evidence, aliunde, may not be received; consequently the formalities to which these testaments are subject must be observed under the penalty of nullity. Since the will must make full proof of itself, the will must itself show that the formalities of the law have been complied with.

"* * * When all the requisites pointed out by law for the validity of a will by authentic act do not appear from the instrument itself, the will must be declared null and void, because no omission in the mention of such requisites can be supplied by testimony; * * *." Falkner v. Friend, 1 Rob., La., 48.

In Succession of Feitel, 187 La. 596, 175 So. 72, 74, the objection to the testament was that "said purported will did not express that same was read to the testator."

It was argued, however, by the proponents of the will that the concluding paragraph supplied any previous deficiency; that paragraph read: "And the whole of the foregoing, the dictating, the writing, the reading and the signing was done at one time and without turning aside to other acts, the whole in the sight and presence of all of said witnesses, and me, Notary."

The Supreme Court of Louisiana held that said clause did not satisfy the strict requirements of the law, that the will must show that it was read to the testator. The Court said:

"Parol evidence is inadmissible to show that all the formalities of a nuncupative will by authentic act have been fulfilled. It must make full proof on its face. Le Blanc v. Baras' Heirs, 16 La. 80.

"Therefore we must look to the actual wording of the will itself to see if it proves on its face that it was read to the testator in the presence of the witnesses. The will recites:

" 'Thus it was that the foregoing will and testament, was dictated to me, Notary, in the presence of all of said witnesses, and by me written as dictated.

" 'And thereupon, the said testator, has hereunto signed his name, in the presence of said witnesses, each of whom has also signed the same in my presence and that of the testator and in the presence of each other.

' "And the whole of the foregoing, the dictating, the writing, the reading and the signing was done at one time and without turning aside to other acts, the whole in the sight and presence of all of said witnesses, and me, Notary.'

"It is very clear that the recital does not show that it was read to the testator. The recital shows that it was dictated to the notary in presence of witnesses; that the notary wrote it as dictated; that the testator and witnesses signed it in presence of each other; that it was all done without turning aside to other acts; and that everything was done in the sight and presence of the witnesses and notary. The only mention we find of the word 'reading' is in the last paragraph quoted above in which it states:

" 'And in the whole of the foregoing * * * the reading * * * was done at one time without turning aside to other acts. * * *'

"We fail to find the foregoing reading referred to, on the face of the will, and we cannot interpret this recital to mean 'read to the testator.' In the case of the Succession of Wilson, 177 La. 119, 148 So. 1, 3, the court annulled a nuncupative will by public act on the ground that the recital in the will itself did not show that notary wrote it himself. The recital showed in that case that it was written; and written as dictated; and read back to the testator in a loud and audible voice in the presence of the witnesses. The court held that it was not only necessary for it to be written by the notary, but that express mention be made in the will itself that it was written by the notary. In the instant case, under the above-quoted authority, the Succession of Wilson, and the various authorities cited therein, we are of the opinion that the omission to recite that the will was 'read to the testator' is fatal and that it should be annulled." [4]

In Conner v. Brasher, 25 La.Ann. 663, the Supreme Court of Louisiana had before it the precise question involved here. The Court said: "We find in this will no express mention that the witnesses were present at the time it was received by the notary, and dictated by the testator. That they came with him to the office of the notary, and were present when the will was read to him was not sufficient. This might be strictly true, and yet the witnesses might not be present at the dictating and writing of the testament. The instrument does not conform to the requirements of article 1578 of the Revised Code, and it is therefore void." Succession of Wilkin, 21 La. Ann. 115; Langley's Heirs v. Langley's Ex'rs, 12 La. 114, 117; Alloway v. Babineau, 8 La.Ann. 469; Christine v. Verbois, 11 La.Ann. 108; Devall v. Palms, 20 La. Ann. 202, 203.

In Succession of Wilkin, 21 La.Ann. 115, the Court said:

"It is well settled that, since a nuncupative will by public act makes full proof of itself, it must bear upon its face the evidence that all the formalities required by law for its validity have been complied with, inasmuch as the fulfillment of those

---

[4] Rehearing was granted on this case, and on rehearing the court held that the plaintiff was without interest to question the validity of the will and dismissed his suit, but nothing said on rehearing would indicate a departure by the majority of the members of the court who concurred in the views concerning the will expressed in the original opinion.

formalities, when not apparent from the instrument itself, cannot be established by evidence aliunde. C.C. 1640; (Le Blanc v. Baras' Heirs, 16 La. 82.)

\* \* \* \* \* \* \*

"What, then, is to be received by the notary? The law answers the question; the testament—not as already written, for the notary is to write it himself but from the lips of the testator; the testator dictating his desires, and the notary writing what is so dictated in the presence of the witnesses required by law. And, as the will must afterwards be read to the testator in the presence of the same witnesses, at the same interview, the law has provided a double safeguard against both honest mistake and dishonest practice. \* \* \*

"Express mention must then be made of the whole, that it may appear by authentic evidence that the commands of the legislator have been obeyed. On no other conditions will the law recognize the testament as legal, and suffer the established order of succession to yield to the desires of the testator.

"It is plain that in the testament we are now considering there is no express mention that the witnesses were present at that important portion of the reception of the testament by the notary, which consists of the dictation and writing down. So far as the document informs us, one of the witnesses, as in the case of Langley [Langley's Heirs v. Langley's Ex'rs], 12 La. [114] 117, might have been absent during a part of the interview, or as in the case of Alloway v. Babineau, 8 [La.] Ann. 469, might have gone about town attending to his business during the process of dictation. None of the witnesses may have been present at all until the time when their presence is first indicated in the testament itself, namely, when the will was read aloud and signed. It is not for those who oppose the will to show that the witnesses were absent at some important moment; it is for the testament itself to show that they were present from first to last. \* \* \*."

 Guided, as we must be, by the interpretation placed upon the applicable local law by the State's highest Court, we must conclude, as did the court below, that the will is void for failure to state that it was dictated to the notary and by him written down as dictated in the presence of the witnesses. Having reached that conclusion, we find it unnecessary to pass upon the question whether the cause which prevented the testator from signing his name was sufficiently set forth in the will.

 The alternative contention of appellant that the court below, upon decreeing the will and the probate thereof null, should have referred the matter back to the State probate court for further proceedings is predicated upon the claim that the decedent left an earlier will which is subject to probate if the one now before the court is void. There is nothing in the judgment rendered in this cause to prevent the probate of this will in the State probate court. Federal courts are not courts of probate, hence, of necessity, another will would have to be probated in State court proceedings. Nothing herein is prejudicial to that right.

The judgment appealed from is correct and it is accordingly affirmed.