### HOLLEY COAL CO. v. GLOBE INDEMNITY CO.

#### No. 6168.

United States Court of Appeals Fourth Circuit.

Argued Nov. 20, 1950.

Decided Dec. 27, 1950.

Roy S. Samms, Jr., Charleston, W. Va., and Bernard J. Pettigrew, Jr., Charleston, W. Va., for appellant.

Robert W. Lawson, Jr., Charleston, W. Va. (Stanley C. Morris and Steptoe & Johnson, Charleston, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This civil action was instituted in the Circuit Court of Kanawha County, West Virginia, by Holley Coal Company (hereinafter called Holley Company) for the purpose of recovery on an indemnity bond in the penalty of $10,000.00, theretofore issued by defendant Globe Indemnity Company (hereinafter called Globe), covering losses incurred during 1947 and 1948 through the alleged defalcation of Holley Company's employees. On motion of defendant Globe, this case was removed to the United States District Court for the Southern District of West Virginia. The case was submitted to a jury on certain interrogatories, and judgment was ultimately entered in favor of Globe on the jury's answers to these interrogatories. Holley Company brings this appeal.

The bond agreed to indemnify Holley Company for any loss incurred through the dishonest acts of its employees, the bond also stated that certain limitations and conditions set forth in Sections A and B thereof should be conditions precedent to recovery under the bond. Sections A and B, and the riders thereto, defined "Employees" and expressly excepted from this definition the following officers of Holley Company: A. J. Holley—President; Blanche Holley—Vice President (his wife); Margaret Martin—Secretary-Treasurer (his daughter).

The Declaration filed by Holley Company in the West Virginia state court averred that Holley Company had suffered a loss in excess of $10,000, because of the embezzlement of an employee; it did not aver that those persons expressly excepted from coverage were not, in whole or in part, responsible for the loss. Holley Company presented its case solely by introducing evidence tending to show that one Layton L. Bennett, an employee, embezzled the money.

Globe's answer, filed in the United States District Court after removal, was in essence a general denial of the averments of Holley Company's declaration, to which was added a second defense stating that the action was not brought within two months after the loss as required by the terms of the bond.

This answer was not signed. Later, over the objections of Holley Company that the answer was not signed, Globe was permitted to file a first amended answer which repeated the general denial and made more specific the second defense. At the trial, however, it developed that Globe was defending on the theory that A. J. Holley and the other persons expressly excepted from coverage were responsible, either by themselves or in conjunction with "employees," for the loss. Evidence tending to prove this defense was admitted by the District Judge and interrogatories were submitted to the jury, The jury's answers to these interrogatories supported this defense and the jury was discharged. Weeks later, over the objection of Holley Company, Globe was permitted to file a second amended answer incorporating this defense, and judgment was entered by the District Court in favor of Globe.

█ The first question raised by this appeal, therefore, is whether the District Judge properly permitted the complicity of those persons expressly excepted from coverage to become an issue in the case. We think he did.

The bond seems to expressly provide that Holley Company must show as a condition precedent to recovery that the loss was not attributable to those persons excepted in the bond. Such a showing would thus become a part of Holley Company's case (not an affirmative defense), to be pleaded and proved by it. Federal Rules of Civil Procedure, Rule 9(c), 28 U.S.C.A.; McAllister v. City of Riesel, Tex., 5 Cir., 146 F.2d 130.

Be that as it may, Rules 15(b) and 15(c) of the Federal Rules of Civil Procedure state:

"(b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

"(c) *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

We think that this issue was tried with the implied consent of Holley Company. Prior to this case, two other legal proceedings had issued from the alleged embezzlement of the funds in question. One, a criminal action against Layton Bennett, resulted in his acquittal. Another, a suit by Layton Bennett against A. J. Holley for malicious prosecution and other alleged wrongs growing from the criminal proceeding, resulted in a mistrial. These cases involved almost identically the facts and testimony presented in the instant case. Globe's defense was thus well known to Holley Company when this case was tried below. Counsel for Globe had referred to this defense in his opening statement and this reference was commented upon by Holley Company's counsel. Much of the evidence tending to establish this defense was not objected to, and such objections as were made were based on the grounds of prejudice to Holley Company or on general irrelevancy, not on the ground that the evidence was irrelevant to the issues raised by the pleadings. Also, Holley Company expressly stated in the court below that it had no exceptions to the interrogatories submitted to the jury, some of which presented this issue. And no exceptions were taken to that part of the charge to the jury which dealt with this issue. We do not say that failure to take timely exception in

these matters will necessarily shield error but we do think that this failure indicates Holley Company's consent that this issue be tried.

■■ The Federal Rules of Civil Procedure indicate a policy to disregard technicalities and form and to determine the rights of litigants on the merits. To that end these rules are to be liberally construed. Mitchell v. White Consolidated, 7 Cir., 177 F.2d 500; Ray v. Morris, 7 Cir., 170 F.2d 498; Fakouri v. Cadais, 5 Cir., 147 F.2d 667, certiorari denied 326 U.S. 742, 66 S.Ct. 54, 90 L.Ed. 443. Amendments are to be liberally allowed where no prejudice results. United States v. Koike, 9 Cir., 164 F.2d 155; Blair v. United States, 8 Cir., 147 F.2d 840; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865. And the trial court has wide discretion in the allowance of amendments. Sheridan Wyoming Coal Co. v. Krug, 84 U.S.App. D.C. 172, 172 F. 2d 282, reversed on other grounds, Chapman v. Sheridan-Wyoming Coal Corp., 338 U.S. 621, 70 S.Ct. 392; Schuckman v. Rubenstein, 6 Cir., 164 F.2d 952, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151.

Holley Company was prejudiced neither by the trial of the issue of the complicity of those persons excepted from coverage, nor by the second amended answer covering this issue. Holley Company was in no way surprised, it impliedly consented to the trial of this issue, and the allowance of the second amended answer could not have affected the jury's answers to the interrogatories, since it followed the jury's discharge. By Rule 15(c), this amendment related back to the date of the original answer and supported all evidence admissible to establish A. J. Holley's connection with the loss.

■ Holley Company argues further, that even if this defense were properly litigated, the evidence was irrelevant to the issue. A. J. Holley was virtual sole owner of the Holley Company, a corporation. It has already been said that Globe's defense was the participation of A. J. Holley in the defalcation, that he was, in short, stealing his own money. It was implicit in

Globe's theory and evidence that this was done to evade federal income taxes. Thus, we think that the Federal Income Tax Lien, even though it was not filed until December, 1949, roughly two years after the funds disappeared, was properly admitted to show that A. J. Holley had tax troubles and a motive for acquiring the funds of the Holley Company in a tax-free manner. This lien covered a period, 1941-1946, before any money disappeared, and A. J. Holley's tax difficulties must have been in his mind for a long time.

■ And examples of A. J. Holley's purchasing for his own or his family's use a motorboat, shares in gas wells, etc., with funds of the Holley Company, at least one of which items (the motorboat) was entered fictitiously on the books as a business expense, do constitute evidence of a scheme to defraud the federal government and provide further evidence of an inclination to abstract business funds. West Virginia follows the general rule that evidence of such specific acts is admissible to show scheme, plan, or design; First National Bank of Pennsboro v. Barker, 75 W. Va. 244, 83 S.E. 898; and by Federal Rules of Civil Procedure, Rule 43(a), the same evidence is admissible in the federal courts sitting in West Virginia.

■ Objection is also made by Holley Company to the permitted filing of the first amended answer, the reason being that the original answer was unsigned. Reliance is placed on Rule 11 which provides that an unsigned pleading "may be stricken as sham and false". But an unsigned pleading is not invalid. In re Legon, D.C., 85 F.Supp. 946; Pallant v. Sinatra, D.C., 7 F.R.D. 293. Striking the pleading is within the sound discretion of the court. The District Court did not abuse its discretion; no reason appeared for this failure to sign other than oversight. And the first amended answer, which contained everything the original answer contained, was signed. Likewise was signed the second amended answer, on the allegations of which the ultimate judgment was based.

The second major question presented by this appeal concerns the manner in which

the issues were submitted to the jury. The heart of the case went to the jury on Interrogatories 2 and 4. No. 2 asked:

"Was any loss of money by Holley Coal Company caused by any dishonest act or acts committed by any one or more of its employees, other than A. J. Holley, Blanche Holley or Margaret Martin, acting directly or in collusion with others, after June 6, 1947?" Answer: "Yes." No. 4, when first given to the jury, read: "Was this loss due to an act of Layton L. Bennett?" It was later changed to read: "To whose acts was this loss due?" Answer: "The clerical employees of the Holley Coal Company, in collusion with A. J. Holley, Blanche Holley, and Margaret Martin."

Holley Company argues that this change in No. 4 was prejudicial to it, that the answers to these interrogatories are inconsistent, and that the jury either misunderstood No. 4 or was mislead by the court's charge.

We do not find these answers inconsistent. The jury appears to have thought that A. J. Holley and his wife and daughter colluded with or abetted certain clerical employees in the removal of the money, among whom Layton L. Bennett may, or may not, have been. The court in its charge to the jury explained that the phrase "in collusion with others" in Interrogatory No. 2 would cover collusion with A. J. Holley and the others excepted from the coverage of the bond. The jury's answers to the interrogatories are thus consistent with the theory upon which Globe defended.

We have carefully examined the District Court's charge to the jury; it appears to have been fair and correct. It severally discussed the evidentiary facts and pointed out the inferences that might be drawn from these facts, some of them favorable to Globe, some favorable to Holley Company. It left open and, with one qualification that we shall soon discuss, correctly framed for the jury the important issue, that of deciding who took the money; and the District Judge did not betray any personal opinion he may have had in the matter. The charge clearly framed the issue, the interrogatories simply put this issue to the jury. There is no merit in the contention of Holley Company that the jury misunderstood the interrogatories or might have been mislead by the charge. Nor do we think that the changing of Interrogatory No. 4 prejudiced the jury against Holley Company. The jury apparently understood the case, and this change was an improvement in that it elicited not only a decision on Holley Company's theory that Bennett took the money, but also a decision on Globe's theory that A. J. Holley and the others excepted from the bond participated in taking this money.

The one reservation we have mentioned in discussing the charge is that the District Judge inferred that Holley Company could recover if an "employee" participated in the theft, and this irrespective of the complicity of those persons expressly excepted from coverage. This is an incorrect statement of the law; participation by those persons excepted from coverage would bar recovery. The District Court recognized this when it entered judgment for Globe, and the contrary is not argued here. The point is, that when the jury returned the answers to the interrogatories, it had been led to believe that Holley Company would recover on the basis of those answers. Had this been a case where a general verdict had been returned by the jury for Holley Company, we would reverse because of this error in the charge. But here we have a judgment entered by the District Court, which is consistent with the jury's answers to the interrogatories. And Holley Company was not prejudiced by this instruction.

Finally, the question of the sufficiency of proof has been raised. It is true that when fraud or dishonesty is an element of a civil suit, it must be shown by clear and convincing evidence. See Hardware Mut. Ins. Co. of Minnesota v. Jacob Hieb, Inc., 8 Cir., 146 F.2d 447, 452. But it is also true that when we review a judgment returned on conflicting evidence, we must take that view of the evidence most favorable to the appellee (Globe here). We must assume that the jury disregarded or disbelieved all evidence inconsistent with its answers to the interrogatories. Laven-

der v. Kurn, 327 U.S. 645, 654, 66 S.Ct. 740, 90 L.Ed. 916; Traders and General Ins. Co. v. Powell, 8 Cir., 177 F.2d 660. We think that the jury heard evidence which can be called clear and convincing proof of fraud and misappropriation on the part of A. J. Holley and the others.

From the evidence favorable to Globe, the jury could reasonably infer the facts set out below in this paragraph. A. J. Holley, by reason of tax difficulties and the prospect of paying lower income taxes, had a motive for acquiring the money by misappropriation, rather than by salary and dividends. A. J. Holley habitually intermingled the assets of Holley Company with those of an automobile business he also owned, without taking care to see that proper bookkeeping entries were made to show the respective earnings of the two businesses. Funds of the Holley Company were used to buy articles for the personal use of A. J. Holley and members of his family, and at least one of these expenditures was fictitiously entered on the books of the corporation as a business expense. A. J. Holley caused to be entered on the books of the Holley Company large sums as prospecting expenses which sums in whole or in part were never spent for that purpose. A. J. Holley caused to be withdrawn from Holley Company's account larger sums than were necessary to cover the payroll. This excess appeared in the pay envelopes of A. J. Holley and other members of his family who were employed by Holley Company, which excess was not accounted for in the books of Holley Company and exceeded the salaries that those persons were ostensibly entitled to receive.

Presumably the jury accepted this view of the evidence and discarded and disbelieved that evidence tending to show that Layton Bennett had himself, without the collusion of Holley Company's excepted officers, embezzled the money. We think that these findings will clearly support the ultimate conclusion of the jury that A. J. Holley and the others excepted were responsible for the disappearance of the money. The motive was present, a prac-

tice of habitual intermingling of funds and loose accounting methods were proven, and it could be readily inferred that the pay envelopes of the Holleys were being padded. The money could have disappeared either by this padding, or by being siphoned into other Holley activities, or by a combination of both.

This case was really tried with two alternatives: one pointing to Layton Bennett's sole dishonesty, the second to the dishonesty of A. J. Holley and the others excepted from the bond. The essential questions presented are those of the credibility of witnesses, which is peculiarly the province of the jury.

The judgment of the District Court is affirmed.

Affirmed.